OPINION
{¶ 1} Plaintiff-appellant, William Taylor, appeals from a judgment of the Franklin County Court of Common Pleas granting the summary judgment motion of defendants-appellees, XO Communications, Inc. and XO Interactive, Inc. Because no genuine issue of material fact exists, and defendants are entitled to judgment as a matter of law, we affirm. *Page 2 
 {¶ 2} Plaintiff filed his original complaint on June 17, 2004, naming as defendants XRG, Inc., FAX.COM, Inc., Impact Marketing Solutions, LLC, Data Research Systems, Inc. ("DRS"), XO Communications, Inc., XO Ohio, Inc., John Doe, and Jane Doe(s). Plaintiff claimed defendants sent him unsolicited facsimile advertisements in violation of the Telephone Consumer Protection Act ("TCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). The trial court granted default judgment against XRG, Inc., FAX.COM, Inc., Impact Marketing Solutions, LLC, and DRS.
 {¶ 3} On July 30, 2004, XO Communications, Inc. and XO Ohio, Inc. filed a motion for summary judgment. The trial court granted the motion on all claims, but it allowed plaintiff to amend his complaint. On February 2, 2006, plaintiff amended his complaint to add XO Interactive, Inc. to XO Communications, Inc. and XO Ohio, Inc. as defendants in the action. In allegations identical to the ones asserted in the original complaint, the amended complaint alleged violations of the TCPA and OCSPA against XO Interactive, Inc. as well. Although plaintiff subsequently voluntarily dismissed without prejudice all claims against XO Ohio, Inc., plaintiff maintained his action against XO Communications, Inc. and XO Interactive, Inc. (collectively, "XO").
 {¶ 4} XO filed a motion for summary judgment directed to all of plaintiff's claims. Well before the discovery cut-off date, plaintiff filed his memorandum contra XO's motion. Subsequent to filing his response, plaintiff on March 22 served his first set of discovery requests on XO. He followed his discovery requests with a motion to conduct the telephone depositions of John Boyer and Debbie Cappa Douglas.
 {¶ 5} Although XO earlier responded to plaintiff's discovery request, XO produced additional documents in June 2006. Based on those documents, plaintiff filed a motion on *Page 3 
June 20, 2006 to supplement his response to XO's motion for summary judgment. On June 27, 2006, the trial court granted XO's motion for summary judgment, overruled plaintiff's motion to supplement his response, and found moot plaintiff's motion to conduct depositions by telephone. Plaintiff appeals, assigning the following errors:
 I. The trial court erred in granting summary judgment to Defendants-Appellees XO Interactive, Inc., and XO Communications, Inc., on the Plaintiff-Appellant's claims of violations of the Telephone consumer Protection Act.
 II. The trial court erred in granting summary judgment to Defendants-Appellees XO Interactive, Inc., and XO Communications, Inc., on the Plaintiff-Appellant's claims of violations of the Ohio Consumer Sales Practices Act.
 III. The trial court erred in overruling Plaintiff-Appellant's Motion to Conduct Depositions by Telephone.
 IV. The trial court erred in overruling Plaintiff-Appellant's, June 20, 2006, Motion to Supplement Response to Defendant-Appellee's Motion for Summary Judgment.
I. The Trial Court's Rationale {¶ 6} Filed in 2004, plaintiff's original complaint alleged plaintiff received between 80 and 120 unsolicited facsimile advertisements ("fax ads" or "faxes") without his consent. Although plaintiff acknowledged in his deposition that he did not know who actually sent the ads, plaintiff believed XO owned and maintained some of the toll-free numbers located at the bottom of the fax ads and for that reason should be liable to plaintiff under the TCPA and OCSPA.
 {¶ 7} According to the evidence submitted in connection with XO's summary judgment motion, XO Interactive entered into a written contract with DRS on or about
June 23, 2003 to provide DRS with a custom Interactive Voice Response ("IVR") service. *Page 4 
(Debbie Cappa Douglas Affidavit, ¶ 2-3.) The IVR provided technology that allowed DRS's customers to call 12 toll-free numbers. Those numbers would prompt callers, using a prerecorded message, to select one of the following options: (1) remove their fax number from the database, (2) add it to the database, or (3) leave a message consisting of a name and phone number. Id. at ¶ 4. The IVR service gathered data that callers entered into the system and forwarded it to DRS. Id. at ¶ 6. XO Interactive did not have access to DRS's fax number database and did not add or remove fax numbers from it. Id.
 {¶ 8} XO Communications provided and managed the toll-free numbers that were routed to the IVR application. Id. at ¶ 7. Because the toll-free numbers only could accept inbound calls but could not place out-bound calls, faxes could not be sent from the toll-free numbers. Id. XO did not send unsolicited faxes on behalf of its customers or anyone else and did not control the content of any advertisements. Id. (2004 Douglas Cox Affidavit, ¶ 6.) XO averred through Cox that XO is merely a common carrier and did not originate or control any unsolicited fax advertisements. Id.
 {¶ 9} In granting XO's motion for summary judgment, the court concluded plaintiff failed to produce any evidence attributing the unsolicited fax ads to XO. The trial court overruled plaintiff's "motion to supplement," stating the court could not consider the unauthenticated documents plaintiff submitted following XO's second document production. The court further noted that, even if the court considered the documents, nothing demonstrated that XO either sent the unsolicited fax ads to plaintiff or maintained a high degree of involvement in, or had actual notice of, unlawful activity and failed to take steps to prevent such activity. *Page 5 
 {¶ 10} According to the trial court, XO at most removed names and numbers from the list of people who were sent faxes. Based on the evidence, the trial court determined XO was not liable under the TCPA because XO was merely a common carrier responsible for maintaining and controlling the removal numbers. Because the trial court concluded that XO's controlling removal numbers could not be a basis for liability under the TCPA, the court found plaintiff's claim under the OCSPA likewise failed.
 {{¶ 11} All of plaintiff's assignments of error arise from the trial court's judgment granting summary judgment to XO. An appellate court's review of summary judgment is conducted under a de novo standard.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 41; Koos v. Cent.Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579, 588. Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists, (2) the moving parties are entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; State ex rel. Grady v. State Emp. Relations Bd. (1997),78 Ohio St.3d 181.
 {¶ 12} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. The moving party, however, cannot discharge its initial burden under the rule with a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to evidence of a type listed in Civ.R. 56(C), affirmatively demonstrating that the non-moving party has no evidence to support the *Page 6 
non-moving party's claims. Id.; Vahila v. Hall (1997),77 Ohio St.3d 421. Once the moving party discharges its initial burden, summary judgment is appropriate if the non-moving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Dresher at 293;Vahila at 430; Civ. R. 56(E). See, also, Castrataro v. Urban (Mar. 7, 2000), Franklin App. No. 99AP-219.
II. Fourth Assignment of Error {¶ 13} Because plaintiff's fourth assignment of error concerns evidence that potentially affects our determining whether the trial court appropriately granted summary judgment to XO, we address it first. In it, plaintiff contends the trial court improperly overruled his "motion to supplement" his response to XO's motion for summary judgment. Specifically, plaintiff claims XO produced documents on June 13, 2006 that prove XO had actual notice its customer, DRS, was faxing "spam" to plaintiff. One such document, stamped XO 453, states: "Obstacles: This customer faxes spam. High risk for legal actions against them at any time." Another document, stamped XO 369, indicates that DRS was the services agent for Fax.com and states: "It is unclear * * * whether or not we will have a point of contact within Fax.com to communicate during development and production [of the IVR application]."
 {¶ 14} Franklin County Common Pleas Court Loc.R. 57.01 provides that "[a]ll motions for summary judgment filed pursuant to Civil Rule 56 are hereby set for a non-oral hearing date on the 28th day following the filing of the motion for summary judgment. Motions shall be deemed submitted to the judge for non-oral hearing on that date." The rule clarifies that "[a]ny party seeking to change the hearing date must do so by entry signed by the Trial Judge and served on all counsel. This rule does not alter the response *Page 7 
dates for memorandum contra and replies under Local Rule 21.01, or the deadline for filing opposing affidavits under Ohio Civil Rule 56." Pertinent to plaintiff's contentions, Loc.R. 57.02 states that all "affidavits, depositions, and other evidentiary material permitted by Civ.R. 56(C) in support of or in opposition to the motion for summary judgment shall be filed prior to the day set for the non-oral hearing on the motion."
 {¶ 15} XO filed its motion for summary judgment on February 27, 2006. Plaintiff filed his response on March 10, 2006, and XO filed its reply brief on March 17, 2006. Pursuant to Loc.R. 57.01, XO's motion was deemed submitted to the trial court for decision on March 27, 2006. Pursuant to Loc.R. 57.02, plaintiff was required to file all evidentiary material in opposition to the motion prior to March 27, 2006. Because XO's response to plaintiff's March 22 discovery request was not yet due, plaintiff was unaware on March 27 what XO's response might contain.
 {¶ 16} When a party finds itself having to respond to a summary judgment motion before adequate discovery is completed, the proper remedy is to move the trial court to delay judgment under Civ.R. 56(F).Maschari v. Tone, 103 Ohio St.3d 411, 2004-Ohio-5342; Drake ConstructionCo. v. Kemper House Mentor, Inc., Lake App. No. 2005-L-157,2007-Ohio-120; MacConnell v. Safeco Property, Montgomery App. No. 21147,2006-Ohio-2910; Alexander v. Tullis, Portage App. No. 2005-P-0031,2006-Ohio-1454 (stating that when discovery is not yet complete and a party files a motion for summary judgment, the non-moving party's remedy is to move the trial court to delay judgment under Civ.R. 56[F]).
 {¶ 17} Civ.R. 56(F) provides that, "[s]hould it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons *Page 8 
stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had." Civ.R. 56(F) allows a party the opportunity to request additional time to obtain through discovery the facts necessary to adequately oppose a motion for summary judgment. Carolina Tobacco Co. v.Petro, Franklin App. No. 04AP-1125, 2006-Ohio-1205. A party who fails to seek relief under Civ.R. 56(F) in the trial court does not preserve his rights under the rules on appeal. Jackson v. Walker, Summit App. No. 22996, 2006-Ohio-4351, citing RR Plastics, Inc. v. F.E. Myers Co.
(1993), 92 Ohio App.3d 789; Maschari, supra (upholding decision to grant summary judgment prior to the completion of discovery where the non-moving party failed to file a Civ.R. 56[F] motion for a continuance); Tullis, supra (upholding the trial court's granting of summary judgment where the non-moving party failed to file Civ.R. 56[F] motion).
 {¶ 18} Here, the discovery cut-off was not until July 10, 2006. XO's motion was filed on February 27, 2006, only a few weeks after plaintiff filed his amended complaint, though nearly two years after his original complaint. Given the timing of XO's motion, plaintiff's remedy was to move the trial court to delay judgment on the motion under Civ.R. 56(F) until XO responded to plaintiffs discovery request. Plaintiff's "motion to supplement" dated June 17, 2006 and included in the same document as plaintiff's response to XO's motion for leave to file notice of additional authority, is not contemplated under the civil rules and does not meet the requirements of Civ.R. 56.
 {¶ 19} Specifically, even had plaintiff characterized his motion as one under Civ.R. 56(F), it was filed well beyond the March 27, 2006 deadline. Loc.R. 57.01. O'Brien v. Sutherland Building Products,Inc. (Mar. 24, 1994), Franklin App. No. 93AP-948. Indeed, *Page 9 
plaintiff did not file the "motion" until three months after XO's motion for summary judgment was deemed submitted to the trial court for decision.
 {¶ 20} In addition, Civ.R. 56(F) required plaintiff to submit an affidavit stating the reasons justifying an extension. Cook v. ToledoHospital, 169 Ohio App.3d 180, 2006-Ohio-5278; Castrataro v. Urban,M.D., Franklin App. No. 03AP-128, 2003-Ohio-4705. If no affidavit is presented, the trial court need not grant the extension. Id. Here, although plaintiff set forth reasons in the memorandum accompanying his motion to supplement, plaintiff did not file an affidavit. Accordingly, plaintiff's motion fails on that basis alone. O'Brien, supra, citingGrange Mut. Cas. Co. v. State Auto Mut. Ins. Co. (1983),13 Ohio App.3d 217.
 {¶ 21} Lastly, even if we assume plaintiff met the procedural requirements, the trial court did not err in refusing to consider the documents, as plaintiff failed to properly authenticate them. In order to defeat summary judgment, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. Civ.R. 56(E). Rather, the nonmoving party must respond with evidence of the type listed in Civ.R. 56(C) that demonstrates a genuine issue of material fact exists for trial.
 {¶ 22} Documents must be properly authenticated to be of the evidentiary nature Civ.R. 56(C) requires. Lane v. City of Marion (Mar. 29, 2001), Marion App. No. 9-2000-104. "Documents submitted in opposition to a motion for summary judgment which are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial." Zeedyk v. Agricultural Society ofDefiance Cty., Defiance App. No. 4-04-08, 2004-Ohio-6187, ¶ 19;State ex rel. Shumway v. State Teachers Retirement Bd. (1996), *Page 10 
 114 Ohio App.3d 280. Here, the documents plaintiff submitted to the trial court were not sworn, certified, or authenticated by an affidavit. Thus, the documents were improper under Civ.R. 56, and the trial court could properly exclude them.
 {¶ 23} Accordingly, plaintiff's fourth assignment of error is overruled.
III. First Assignment of Error {¶ 24} In the first assignment of error, plaintiff contends the trial court erred in granting summary judgment to defendants on plaintiff's claims that XO violated the TCPA. XO argues that because XO was not involved in sending the unsolicited fax ads, plaintiff cannot establish a violation of the TCPA. Plaintiff, in response, maintains that liability under the TCPA does not solely depend on whether XO sent the unsolicited ads.
 {¶ 25} The TCPA, Section 227(b)(1)(C), Title 47, U.S. Code provides that "[i]t shall be unlawful for any person within the United States * * * to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement." The TCPA creates a private right of action to recover for actual monetary loss from such a violation or to enjoin such a violation. Section 227(b)(3), Title 47, U.S.Code. In 1992, the Federal Communications Commission ("FCC") adopted regulations implementing the TCPA. See Section 64.1200, Title 47, C.F.R. The regulations define "unsolicited advertisement" as any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission. Section 64.1200(f)(13), Title 47, C.F.R.
 {¶ 26} In its 1992 order, the FCC explained that common carriers simply providing transmission facilities to transmit others' fax ads are not liable in the absence of a high *Page 11 
degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions. In the Matter of Rules and Regulations Implementing the TCPA of 1991, 7 F.C.C.R. 8752, 8779. Since the inception of the TCPA and initial rules, the FCC clarified on several occasions that third parties, such as fax broadcasters or common carriers, may be liable under those circumstances.
 {¶ 27} For example, in 2003 the FCC addressed concerns regarding the extent of liability for common carriers and fax broadcasters. The FCC amended the rules "to state explicitly that a fax broadcaster will be liable for an unsolicited fax if there is a high degree of involvement or actual notice on the part of the broadcaster." Sections 44166, 44169, Title 47, C.F.R., eff. 2003. Similarly, the FCC continued to state that common carriers are exempt in the absence of a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions. "We reiterate here that if a common carrier is merely providing the network over which a subscriber [a fax broadcaster or other individual, business, or entity] sends an unsolicited facsimile message, that common carrier will not be liable." Id. See Kaufman v. ACS Systems, Inc. (2003), 110 Cal.App.4th 886, 2 Cal.Rptr.3d 296.
 {¶ 28} In 2006, in connection with the enactment of the Junk Fax Prevention Act of 2005, the FCC further clarified the definition of "sender" to mean the person or entity on whose behalf the fax is transmitted or whose goods or services are advertised or promoted in the unsolicited advertisement. Section 64.1200(f)(8), Title 47, C.F.R.;Covington Burling v. Internatl. Marketing Research, Inc. (Apr. 17, 2003), D.C. Super. No. 01-0004360 (imposing liability on the sender of faxes as well as the companies whose products were advertised);Dawson v. Digicall Communications (July 10, 2006), *Page 12 
Lake Cty. Common Pleas Court No. 05CV001636. The FCC restated that a fax broadcaster will be liable for an unsolicited fax if the recipient demonstrates a high degree of involvement in or actual notice of the unlawful activity and fails to take steps to prevent such transmissions. Accordingly, based on the 2003 and 2006 reports and rules, common carriers, such as XO, may be liable if a plaintiff demonstrates the requisite degree of involvement or actual notice.
 {¶ 29} To support his assertions that XO violated the TCPA, plaintiff submitted two affidavits, dated August 2004 and March 2005 respectively, in opposition to XO's motion for summary judgment. In them, plaintiff stated XO was involved in the "sending, transmitting, and maintaining of the 1-800 numbers for the advertisements, and many other ways in the unsolicited fax ads that I received." (2004 Taylor Affidavit, ¶ 8; 2005 Taylor Affidavit, ¶ 9.) Plaintiff's deposition testimony, however, reveals he did not know who actually sent the fax ads, but believed XO controlled and administered the numbers on the advertisements.
 {¶ 30} XO's witnesses, Cox and Douglas, testified that XO simply provided DRS with an IVR service by furnishing and maintaining the toll-free numbers for DRS's customers, gathering data from the customers, and forwarding that data to DRS. The service accepted only in-bound calls; no fax ads could be sent from the toll-free numbers. Defendants did not have access to DRS's facsimile database and did not control the content of any fax ads.
 {¶ 31} XO's affidavits thus present evidence that XO did not transmit any unsolicited fax ads. Likewise nothing indicated XO defendants' products or services were advertised or promoted in the message. Plaintiff's averments that XO sent or transmitted *Page 13 
the fax ads are not made from personal knowledge and are insufficient to raise a genuine issue of material fact for trial. Gans v.Express-Med, Inc. (Mar. 6, 2001), Franklin App. No. 00AP-548. As a result, plaintiff failed to rebut XO's evidence that XO did not "send" the unsolicited fax ads to plaintiff.
 {¶ 32} Contrary to XO's assertions, however, common carriers such as XO may be liable if the evidence demonstrates a high degree of involvement in or actual notice of the unlawful activity coupled with a failure to take steps to prevent the unlawful activity. Indeed, plaintiff's argument on appeal focuses on whether XO had actual notice of the unlawful transmissions. In support of his contentions, plaintiff averred in his affidavit that XO maintained and operated the toll-free numbers located at the bottom of the fax ads he received, and he testified by deposition that the numbers in themselves indicate XO was aware its customers were sending unsolicited fax ads.
 {¶ 33} Other than the inadmissible documents already noted, plaintiff also relies on the 2003 contract between XO Interactive and DRS. Plaintiff claims the contract reflects that XO (1) had a business relationship with DRS and the other defaulting defendants, (2) provided the toll-free numbers for use on the fax ads, (3) received large sums of money from the other defendants for XO's involvement in the transmissions, and (4) knew XO's services and support were going to be used to transmit the unsolicited faxes.
 {¶ 34} Contrary to plaintiff's assertions, his evidence fails to indicate XO was highly involved with the unlawful transmissions or had actual notice that DRS was involved with unlawful transmissions. Rather, the Statement of Work between XO Interactive and DRS details the IVR service provided to DRS and nothing more. Further, in the services *Page 14 
agreement, DRS represented and warranted to XO Interactive that DRS's telemarketing practices comply with all federal and state regulations.
 {¶ 35} As the trial court correctly determined, XO's removing names or numbers from DRS's facsimile database is insufficient to establish liability under the TCPA. Absent the necessary discovery, plaintiff was unable to rebut XO's evidence that it was merely a common carrier providing the network over which a subscriber, DRS, sent unsolicited fax ads. Because plaintiff failed to produce evidence demonstrating a genuine issue of material fact as to XO's liability under the TCPA, his first assignment of error is overruled.
IV. Second Assignment of Error
 {¶ 36} In his second assignment of error, plaintiff claims the trial court erred in granting summary judgment on his OCSPA claim. The OCSPA prohibits suppliers from committing unfair, deceptive, or unconscionable acts or practices in connection with a consumer transaction. R.C.1345.02; R.C. 1345.03. A consumer transaction is defined as "a sale, lease * * * or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). A violation of the TCPA is generally considered a violation of the OCSPA as well. Culbreath v. Golding Ent,LLC, Franklin App. No. 05AP-1230, 2006-Ohio-2606; Ferron Assoc. v.U.S. Four, Franklin App. No. 05AP-659, 2005-Ohio-6963; Jemiola v. XYZCorp., 126 Ohio Misc.2d 68, 2003-Ohio-7321 (finding that sending unsolicited fax ads is an inherently unfair and deceptive practice in violation of the OCSPA).
 {¶ 37} Plaintiff's claim under the OCSPA is derivative of his claim under the TCPA, as his OCSPA claim exists because of his TCPA claim and relies upon the same set of *Page 15 
operative facts. Because plaintiff cannot establish a violation of the TCPA, plaintiff fails to demonstrate that XO committed an inherently unfair or deceptive practice in connection with a consumer transaction. Accordingly, plaintiff's second assignment of error is overruled.
 {¶ 38} Having overruled plaintiff's first, second, and fourth assignments of error, rendering moot plaintiff's third assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
BROWN and McGRATH, JJ., concur.