OPINION
{¶ 1} Appellant, Laura Zeedyk, appeals the February 11, 2004 judgment of the Court of Common Pleas of Defiance County, Ohio, granting summary judgment in favor of appellee, The Agricultural Society of Defiance County ("Fair Board").
 {¶ 2} This case arose from the showing and sale of a hog at the 2001 Defiance County Fair. Appellant entered her hog at the fair on August 18, 2001, and at that time the hog was healthy. On that date Appellant allegedly completed a Drug Use Notification Form ("DUNF") and deposited that form with Fair Board officials.
 {¶ 3} Subsequent to the entry of the hog, but prior to the show, the hog fell ill. Laura and her parents, Robert and Lois Zeedyk, contacted the fair veterinarian, Dr. Nick Fleming, D.V.M., and Dr. Fleming treated the hog. The record indicates that Dr. Fleming is a licensed veterinarian and is on the Agricultural Society Board and on the Swine Committee. In the course of his treatment, Dr. Fleming injected the hog with an antibiotic, Excenel, and Banamine. Laura asserts that prior to the show Dr. Fleming prepared another DUNF, which was signed by Laura and her mother. They also assert that this second form was deposited with Dr. Fleming as a representative of the fair.
 {¶ 4} At the Junior Fair Show held on August 22, 2001, the hog was awarded Grand Champion Barrow. Thereafter, the hog was sold at auction at the Defiance County Junior Fair Livestock Sale, an event put on by the Fair Board. The winning bid on the hog was for $2,271.80. However, the Fair Board did not announce at the time of the auction that the hog had been treated with the medications.
 {¶ 5} After the sale, the hog tested positive for Banamine and the Ohio Department of Agriculture ordered that the animal be quarantined at the Meyer Slauterhouse, where it had been delivered for slaughter. The hog was quarantined until the drug had cleared from its system. Subsequent tests verified that the hog was free of the drug. However, the slaughterhouse refused to process the animal because they knew of the quarantine. Laura thereafter took back possession of the animal, and the buyers were not billed for their winning bid on the hog.
 {¶ 6} Upon investigation, the Fair Board did not locate a DUNF on file for the hog which indicated that the hog had been treated with Banamine. The Fair Board held a meeting on February 12, 2002 and the Board moved to disqualify Laura and her parents from the livestock exhibition and to reprimand them for failing to complete a DUNF when the hog was given Banamine. At that time, Laura was not notified of the meeting or that disciplinary actions against her were being considered. At the conclusion of the meeting, the Fair Board voted unanimously to disqualify her from the livestock exhibition for failure to complete the DUNF. The Fair Board also voted to ban Laura and her parents from the fair grounds and from further competitions for a period of five years.
 {¶ 7} The Fair Board notified the Zeedyks of these sanctions, but also indicated that the penalties were not going to be enforced pending further investigation. Upon notice of the sanctions, Laura's parents requested a hearing with the Fair Board. The Fair Board allowed the Zeedyks to present their side of the story at the April 2, 2002 Fair Board meeting. At that meeting, the Zeedyks and their attorney presented Laura's case, and attempted to settle the dispute. The minutes of this meeting reflect that no further action was taken on the part of the Fair Board.
 {¶ 8} Thereafter, Laura commenced this action in the Defiance County Court of Common Pleas. Her complaint asserted causes of action for breach of contract and defamation, and sought damages for the amount of the auction price of the hog over market price. She further sought a declaratory judgment that the Fair Board had acted improperly by taking action against her without notice and opportunity to be heard. Finally, Laura sought declaratory relief allowing her to participate in the 2003 County Fair.
 {¶ 9} The Fair Board subsequently filed a motion for summary judgment in the trial court, attaching an affidavit signed by Patrick Slattery, the Fair Board president. The Zeedyks filed a motion in opposition, attaching an affidavit signed by Robert Zeedyk. The Fair Board then filed a motion to strike the Zeedyk affidavit in its entirety, asserting that it was not based on Robert Zeedyk's personal knowledge, contained evidence that was not admissible into evidence, and contained attachments that had not been authenticated. The trial court did not rule on the motion to strike the affidavit, but did state in its February 11, 2004 judgment entry that it would not consider the Zeedyk affidavit "[t]o the extent that [it] fails to comply with the provisions of Civil Rule 56(E)." Subsequently, the trial court granted the motion for summary judgment, ruling that there was nothing of evidentiary quality before the court evidencing a genuine issue of material fact. Laura appealed, asserting one assignment of error:
The trial court erred in granting the Appellee's motion forsummary judgment.
 {¶ 10} The standard of review for a grant of summary judgment is de novo. Lorain Natl. Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Thus, a grant of summary judgment will be affirmed only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, summary judgment is not proper unless reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Id.; see Zivish v.Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367, 369-70. Summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmoving party. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 345, 360.
 {¶ 11} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitzeff v. Wheeler (1988), 38 Ohio St.3d 112. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the nonmoving party to produce evidence on any issue for which that party bears the burden of production at trial. See Civ.R 56(E).
 {¶ 12} In the instant case, the Fair Board fulfilled its burden of demonstrating the absence of any material fact by including with its motion an affidavit signed by Patrick Slattery, President of the Defiance County Senior Fair Board ("Slattery Affidavit"). Slattery testified, and provided documentary evidence, to the fact that the hog had been treated with Banamine, that the hog needed to be quarantined pursuant to OAC § 941-21-02, and that the Fair Board found a violation of the Ohio Administrative Code. Slattery also testified to the fact that the Fair Board provided the Zeedyks an opportunity to be heard at the April 2, 2002 Fair Board meeting.
 {¶ 13} The trial court found that Laura Zeedyk failed to fulfill her burden of production, and therefore granted summary judgment to the Fair Board. The trial court noted that Laura failed to provide anything of evidentiary quality which would demonstrate a genuine issue of material fact. For the following reasons, we agree with the trial court.
 {¶ 14} Under Civ.R. 56(E), a party responding to a motion for summary judgment "may not rest upon the mere allegations or denials of the party's pleadings," but must provide supporting evidentiary materials demonstrating specific facts which show a genuine issue of material fact. Furthermore, subsection (C) requires that only the pleadings, answers to interrogatories, depositions, affidavits, transcripts of evidence, and written stipulations of fact may be filed as supporting materials on a motion for summary judgment. Civ.R. 56(C); see also Carton v.Davisson (1995), 104 Ohio App.3d 636, 646.
 {¶ 15} The only evidence provided in support of Laura's opposition to the Fair Board's motion for summary judgment is an affidavit signed by her father, Robert Zeedyk. However, this affidavit provides nothing of evidentiary quality that would establish a genuine issue of material fact. "Any individual statements which are inadmissible under the evidence rules should be excluded from an affidavit which otherwise complies with Civ.R. 56." Wall v. Firelands Radiology (1995),106 Ohio App.3d 313, 335.
 {¶ 16} First, Robert Zeedyk lacked personal knowledge of the vast majority of the "facts" he is allegedly "testifying" to in the affidavit. Civ.R. 56(E) provides, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." "Personal knowledge" has been defined as "knowledge of the truth in regard to a particular fact or allegation, which is original, and does not depend on information or hearsay."Brannon v. Rinzler (1991), 77 Ohio App.3d 749, 756. The Ohio Supreme Court has defined "personal knowledge" as "knowledge gained through firsthand observation or experience, as distinguished from a belief based upon what someone else has said." Bonacorsi v. Wheeling Lake Erie Railway Co. (2002),95 Ohio St.3d 314, 320.
 {¶ 17} In his affidavit, Robert Zeedyk states that "all information comes from his personal knowledge based uponconversations and/or observations." However, under Ohio law one cannot testify with personal knowledge of an event without having witnessed that event; one cannot obtain personal knowledge basedupon conversations. See Boncorsi, 95 Ohio St.3d at 320. The majority of the facts Zeedyk testifies to in his affidavit were learned through conversations with others. For example, he avers that Laura Zeedyk and her mother completed and signed a DUNF on August 22, 2001 and gave it to Dr. Fleming, but does not testify that he was on hand to witness these events. He further testifies to the actions of Dr. Fleming and the medical effects of Banamine, although there is no foundation to support this medical testimony. He testifies that no fair officials communicated with either his wife or his daughter, though it seems highly unlikely that he was in their presence twenty-four hours a day during this period and is therefore not competent to testify to these events. He further testifies to the events of the February 12, 2002 fair board meeting, even though he has asserted in his complaint that he was not at that meeting. In short, the Zeedyk affidavit contains no foundation for his having personal knowledge of these "facts."
 {¶ 18} Second, the Zeedyk affidavit contains evidence that is not admissible. In addition to the requirement that information be based on one's personal knowledge, Civ.R. 56(E) requires information contained in an affidavit to be otherwise admissible into evidence.
 {¶ 19} Several documents are attached to the Zeedyk affidavit, but they have not been properly authenticated and are therefore inadmissible. "Documents submitted in opposition to a motion for summary judgment which are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial." Green v. B.F. Goodrich Co.
(1993), 85 Ohio App.3d 223, 228, 619 N.E.2d 497, citing CitizensIns. Co. v. Burkes (1978), 56 Ohio App.2d 88, 95-96,381 N.E.2d 963; see also Mitchell v. Ross (1984), 14 Ohio App.3d 75, 75
("Documents which are not sworn, certified or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court."). In order to authenticate the documents, the affiant needs to testify that they are true copies and reproductions of the original. State ex rel. Corrigan v.Seminatore (1981), 66 Ohio St.2d 459.
 {¶ 20} In his affidavit, Zeedyk fails to even identify the attached documents, and certainly fails to testify that they are true and accurate reproductions. For example, Exhibit F appears to be rules for a fair competition, but there is no statement in the affidavit or on the document indicating what these rules are for or where they came from. Additionally, Exhibit C appears to be a DUNF for the hog in question, but Zeedyk does not testify that this is a true and accurate copy of the form that was turned in to the Fair Board, nor does he demonstrate that he has personal knowledge to testify the to veracity of this form.
 {¶ 21} Also attached to the affidavit are several unmarked exhibits which have not been identified or authenticated. These documents include a faxed letter from Wm. Bruce Clevenger to Roger Zeedyk, part of a document written by Lavon Wiles, and a newspaper article from an unidentified publication. These latter two documents were never mentioned anywhere in the affidavit. The Clevenger letter is mentioned only to the extent that Zeedyk claims that the junior fair participants were never taught to fill out a DUNF form after livestock checkin. However, Mr. Clevenger has never been identified for the court, and this letter has not been authenticated as evidence. Nor was Mr. Wiles ever identified to the court, and his memorandum was not authenticated or completely identified.
 {¶ 22} Because these documents have not been properly identified and authenticated, they do not constitute admissible evidence. Consequently, they could not be considered by the trial court in ruling on the motion for summary judgment, and the trial court acted properly in not considering them.
 {¶ 23} Additionally, the remaining Exhibits and the body of the Zeedyk affidavit contain information that is inadmissible hearsay. He testified to statements made by a representative of the Ohio Department of Agriculture, offering them as evidence to prove the reason for the Fair Board's decision to take action. These were statements made by someone other than Zeedyk, and they were offered to prove the truth of the matter asserted. Hence, they are classic hearsay. See Evid.R. 801(C). Further, Zeedyk testified to statements made by the ODA investigator which indicated that the investigation was closed without a finding of improper conduct. These also constitute hearsay statements. Finally, Zeedyk testified to statements made by Dr. Fleming which tended to show that the drugs were administered for "acceptable medical purposes." Again, Zeedyk offers statements made by someone else for the truth of the matter asserted — classic hearsay statements. Accordingly, these statements constitute inadmissible hearsay, and therefore could not have been considered by the trial court in ruling on the motion for summary judgment.
 {¶ 24} In short, Laura has attempted to combine all of her evidence into a single affidavit, when multiple affidavits were necessary to properly admit such evidence. She attempted to introduce medical testimony, which should have been introduced through an affidavit signed by Dr. Fleming. She attempted to introduce evidence pertaining to the actions she took in filling out the DUNF form, evidence which should have been included in an affidavit signed either by herself or her mother — the only individuals with personal knowledge of what took place. Finally, she attempted to include evidence pertaining the Fair Board's investigation into her father's affidavit, when her father had no personal knowledge of the investigation.
 {¶ 25} We are sympathetic to Laura's apparent position, and we believe there is a possibility that the Fair Board acted improperly when it imposed sanctions on her without notice and opportunity to be heard. However, without any proper evidence before the trial court, we cannot say that the trial court erred in granting the motion for summary judgment. There is simply no admissible evidence from which we can discern a genuine issue of material fact.
 {¶ 26} Based on the foregoing, appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment Affirmed.
 Cupp and Rogers, J.J., concur.