[Cite as *Hawken School v. Machado*, 2024-Ohio-1060.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

|   |   |   |
|---|---|---|
| HAWKEN SCHOOL, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 112837 |
| SANDRA MACHADO, | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 21, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-22-961108

### *Appearances:*

Weltman Weinberg & Reis Co., LPA, and Roy J. Schechter,
*for appellee.*

L. Bryan Carr, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Sandra Machado ("Machado"), appeals from the trial court's judgment granting summary judgment in favor of plaintiff-appellee, Hawken School ("Hawken"). Machado raises the following assignments of error for review:

1. The trial court erred in granting the appellee's motion for summary judgment and in denying appellant's motion for summary judgment; it was the appellant who was entitled to summary judgment.

2. The trial court erred in denying the appellant's motion to strike.

3. The trial court erred in denying the appellant's motion for more definite statement.

{¶ 2} After careful review of the record and relevant case law, we affirm the trial court's judgment.

## I. Procedural and Factual History

{¶ 3} Hawken is a coeducational college preparatory day school located in Geauga County, Ohio. On January 15, 2021, Machado, a resident of Cuyahoga County, electronically executed two enrollment agreements (the "Enrollment Agreements") with Hawken on behalf of her minor children, G.M. and J.M., for the 2021-2022 academic school year. At the time the agreements were executed, Machado paid deposits totaling $3,000. The Enrollment Agreements were countersigned by Hawken on February 1, 2021.

{¶ 4} In this case, the Enrollment Agreements set forth the annual tuition and fee obligations for each student, requiring Machado to make payments in the amount of $32,680 for G.M., and $27,950 for J.M. In addition, the Enrollment Agreements contain express provisions concerning the cancellation of a student's enrollment at Hawken. The relevant provisions provide as follows:

> **6. Cancellation Period.** The Parent understands and agrees that the Student is enrolled for the entire school year, and the Parent is liable for the entire year's tuition and fees upon the signing of this Agreement, unless written notice of cancellation is delivered to the School on or before May 1, 2021. If this agreement is entered into on

or after May 1, 2021, the Parent is liable for the tuition and fees as outlined in Section 7 below.

**7. Tuition Obligation.** The Parent further agrees that the Parent's withdrawal or School's dismissal of the Student after the period for cancellation of this Agreement has expired, whether as a result of accident, sickness, move/transfer, disciplinary action, academic failure, negative parent actions or otherwise, does not relieve the Parent of responsibility for payment of the entire year's tuition and fees. **If enrollment for the 2021-2022 school year is cancelled between May 1 and before July 1, 2021, Parents are obligated to pay fifty percent (50%) of the annual tuition and fees. If enrollment is cancelled on or after July 1, 2021, Parents are obligated to pay one hundred percent (100%) of the annual tuition and fees.**

\* \* \*

**9. Finance Charge.** If all or a portion of any payment under Section 7 above is not paid by the due date, the Parent must pay a Finance Charge on the outstanding balance equal to 0.5% for each month the balance remains outstanding. The Annual Percentage Rate of this charge (the cost of credit as a yearly rate) is 6.17%. The Parent further agrees that the total amount, including the finance charges, due and payable to the School shall be considered as agreed upon liquidated damages between the parties to this Agreement.

(Emphasis sic.) (Enrollment Agreement, Sections 6-7, and 9.)

{¶ 5} On July 21, 2021, Machado sent an email correspondence to Brad Large ("Large"), Hawken's Director of Flexible Tuition and Associate Director of Enrollment, notifying Hawken that she intended to cancel the children's enrollment for the 2021-2022 academic-school year. The email stated, in relevant part:

My name is Sandra and both my kids ([G.M. and J.M.]) are currently enrolled at Hawken but we will be transferring them to Solon. Can you please share the procedure for this process? I also would like to have some information about tuition refund.

**{¶ 6}** On March 24, 2022, Hawken filed a civil complaint against Machado, alleging that she "failed to make payments as agreed for [G.M.] in the amount of $30,350 and [J.M.] in the amount of $26,450, for a combined balance due and owing of $56,800." The complaint incorporated the Enrollment Agreements and the outstanding tuition and fee balances for each child as of June 30, 2022.

**{¶ 7}** On June 6, 2022, Machado filed a motion for more definite statement pursuant to Civ.R. 12(E). In the motion, Machado asserted that a more definite statement "as to the claim/complaint being filed against her" was required because the complaint failed "to allege any specific breach of the [Enrollment Agreement]" and is "confusing and ambiguous." The motion was summarily denied by the trial court on June 27, 2022.

**{¶ 8}** On October 6, 2022, Hawken filed a motion for summary judgment, arguing it was entitled to a judgment in the amount of $56,800, plus interest and costs, for unpaid tuition and fees. Relying on Sections 6, 7, and 9 of the Enrollment Agreements, Hawken argued that Machado was liable for the "entire year's tuition and fees" for each student because she failed to provide written notice of cancellation on or before May 1, 2021. Thus, Hawken asserted that it was entitled to judgment as a matter of law, stating:

> Given the uncontroverted facts and language of the Agreements, it is difficult to understand how the contractual liability could be any clearer. By waiting to cancel the Agreements until July 21, 2021, and by refusing to pay the full tuition, Machado is in breach of the Agreements.

Finally, Hawken argued that the Enrollment Agreements' cancellation provision, and the agreed-upon damages set forth therein, constituted a valid and enforceable liquidated-damages clause.

{¶ 9} Hawken's motion for summary judgment was supported by (1) copies of the Enrollment Agreements for G.M. and J.M.; (2) the affidavit of the school's Budget Analyst, Debra Greene ("Greene"); (3) Machado's cancellation email correspondence, dated July 21, 2021, and (4) copies of the students' outstanding tuition and fee balances as of June 30, 2022, reflecting a total balance owed of $56,800.

{¶ 10} On October 7, 2022, Machado filed a competing motion for summary judgment, arguing she is entitled to judgment as a matter of law on Hawken's claim because (1) Hawken provided no educational services to her children for the 2021-2022 academic school year, (2) Section 7 of the Enrollment Agreement did not apply in this case because the children were enrolled before May 1, 2021, and (3) the demand for $56,800 is a disproportionate and unenforceable penalty — not a valid amount of liquidated damages.

{¶ 11} In support of her motion for summary judgment, Machado attached (1) copies of the Enrollment Agreements for G.M. and J.M.; (2) the deposition testimony of Hawken's Assistant Head of School Enrollment Manager, Katherine O'Neil ("O'Neil"); (3) the deposition testimony of Hawken's Chief Financial Officer, James Miller ("Miller"); (4) the deposition testimony of Large; (5) the deposition testimony of Greene; (6) copies of various email correspondences; (7) copies of

written discovery responses, and (8) a copy of an enrollment from a previous school year that contained different terms.

{¶ 12} On November 3, 2022, Machado filed a brief in opposition to Hawken's motion for summary judgment, reiterating her position that Hawken's demand for $56,800 for services it did not provide "is nonsensical and violates the concepts of reasonableness and public policy (common sense)." Machado further sought to strike Greene's affidavit from Hawken's motion for summary judgment. Machado claimed that Greene's affidavit was a "sham" "border[ing] on frivolous" because (1) she was not identified as Hawken's "authorized representative," (2) her affidavit inaccurately infers that she is "deeply involved with and knowledgeable with Hawken's budget," and (3) her averments directly contradicted her deposition testimony.

{¶ 13} On November 4, 2022, Hawken filed a brief in opposition to Machado's motion for summary judgment. Hawken restated its previous arguments and disputed Machado's interpretation of the controlling language in the Enrollment Agreements.

{¶ 14} On May 31, 2023, the trial court issued a judgment entry (1) denying Machado's motion for summary judgment, (2) denying Machado's motion to strike the affidavit of Greene, and (3) granting summary judgment in favor of Hawken. Accordingly, the trial court entered judgment in favor of Hawken in the amount of $56,800 with interest at the rate of 6.17 percent per annum, plus costs.

{¶ 15} Machado now appeals from the trial court's judgment.

## II. Law and Analysis

### A. Motion to Strike

{¶ 16} We consider Machado's assignments of error out of order for the ease of discussion. In the second assignment of error, Machado argues the trial court erred by failing to strike Greene's affidavit from Hawken's motion for summary judgment. Machado contends that the affidavit was frivolous and materially inconsistent with Greene's deposition testimony.

{¶ 17} "We review a trial court's decision to deny a motion to strike an affidavit for an abuse of discretion." *Williams v. Schneider*, 2018-Ohio-968, 109 N.E.3d 124, ¶ 108 (8th Dist.), citing *State ex rel. O'Brien v. Messina*, 10th Dist. Franklin No. 10AP-37, 2010-Ohio-4741, ¶ 21. A court abuses its discretion when it exercises its judgment in an unwarranted way with respect to a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *See, e.g., State v. Musleh*, 8th Dist. Cuyahoga No. 105305, 2017-Ohio-8166, ¶ 36, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "An abuse of discretion also occurs when a court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'"" *Cleveland v. Wanton*, 8th Dist. Cuyahoga No. 109828, 2021-Ohio-1951, ¶ 8, quoting *S. Euclid v. Datillo*, 2020-Ohio-4999, 160 N.E.3d 813, ¶ 8 (8th Dist.), quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶ 18} Civ.R. 56(E) sets forth the requirements for affidavits submitted on summary judgment and provides, in relevant part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit.

{¶ 19} "Ohio courts have defined 'personal knowledge' as 'knowledge gained through firsthand observation or experience, as distinguished from a belief based upon what someone else has said.'" *See RBC, Inc. v. McClintock*, 5th Dist. Stark No. 2016CA00045, 2016-Ohio-5800, ¶ 20, quoting *Zeedyk v. Agricultural Soc. of Defiance Cty.*, 3d Dist. Defiance No. 4-04-08, 2004-Ohio-6187, ¶ 16; *U.S. Bank Trust Natl. Assn. v. Williams*, 10th Dist. Franklin No. 21AP-576, 2022-Ohio-4590, ¶ 34. Ohio law recognizes that personal knowledge may be inferred from the contents of an affidavit. *Bush v. Dictaphone Corp.*, 10th Dist. Franklin No. 00AP-1117, 2003-Ohio-883, ¶ 73. A mere assertion of personal knowledge can satisfy Civ.R. 56(E) if the nature of the facts in the affidavit, combined with the identity of the affiant, creates a reasonable inference that the affiant has personal knowledge of the facts set forth in the affidavit. *Nationstar Mtge., L.L.C. v. Wagener*, 8th Dist. Cuyahoga No. 101280, 2015-Ohio-1289, ¶ 26; *Home S. & L. Co. v. Eichenberger*, 10th Dist. Franklin No. 12AP-1, 2012-Ohio-5662, ¶ 18.

{¶ 20} In this case, Greene's affidavit contained the following relevant averments:

1.  I have been employed by Hawken for five years and am the Business Analyst in Hawken School's business office.  Because of my position, I am familiar with the Hawken School budgeting process during the 2021-2022 school year, including issues relating to the claims made in the captioned lawsuit involving the children of Dr. Sandra Machado.  I have personal knowledge of the matters herein or have otherwise based my knowledge on Hawken business records.

2.  I am familiar with and have access to the business records of Hawken concerning the captioned lawsuit.  These business records * * * are kept in the course of Hawken's regularly conducted business activity relating to its business practices as a private school.  Hawken's regular practice is making and maintaining these records as part of its business records.

3.  Dr. Sandra Machado, on January 15, 2021, electronically executed two Hawken School Enrollment Agreements for her two children, [G.M. and J.M], for the 2021-2022 academic years as set forth in the Enrollment Agreements attached hereto as Exhibits 1 and 2, which are true and accurate duplicates of those business records.

4. On July 21, 2021, Machado notified Hawken by email that her children would not be attending Hawken as set forth in the duplicate email attached hereto as Exhibit 3, which is a true and accurate duplicate of that business record.

5.  As a private school, Hawken goes through a lengthy multi-step budgeting process.  For the 2021-22 school year, the budgeting process began in October 2020 with the formulation of the initial budget.  After that, the budget plan was presented to the Hawken Board in December 2020.  Although the budget was reviewed again later in August, close to the commencement of the school year, the budget was largely finalized by the beginning of May 2020.

6.  The budget is primarily determined by the pooled student "net tuition revenue," which pays for staff salaries and benefits, department budgets, student materials, maintenance, improvements, and utilities.  Net tuition revenue means tuition "net" of financial aid.  A significant portion of this tuition comes from re-enrollments of existing students who move up a grade, and the enrollment packages for the next class year are presented to parents in January with the requirement for a non-refundable deposit at that time.  Any spots not filled by previously enrolled students are evaluated and offered to new families in February.  This was the case in the 2021-2022 school year, and there

was no waiting list for applicants in grade 3 and grade 7[.] Indeed, the target class size for the 2021-2022 third grade class was 64, but actual enrollment was only 61. Similarly, the target class size for the 2021-2022 seventh grade class was 85, but actual enrollment was only 81.

7. The most significant component of the budget is the compensation for teachers and administrators. Most of these employees are sent their yearly contracts as early as February, as was the case in the 2021-2022 school year. Therefore, the January timing of the Enrollment Agreements with the non-refundable deposits for renewing students relates to the committed net-tuition revenue component of the budget, which is relied upon by Hawken to make its contractual financial commitments to its employees.

8. Generally, Hawken sets its budgeted class sizes based on physical space, the number of sections needed in the grade level as determined by the forecasted number of students returning, and projected new student enrollment. When setting budgeted enrollment targets for given class sizes, Hawken looks at various factors, including, but not limited to, classroom faculty, support staff, and specialist staff. The budgeting process is thus not precise "science" but educated guesswork and projections of different variables, culminating in final decisions as the school year approaches. In such a holistic context, it is not possible to calculate the precise financial impact of a given failure to pay individual tuition on the overall budget.

9. On July 21, 2021, Machado formally notified Hawken in an email captioned "Unenrollment," that both of her children "are currently at Hawken but we will be transferring them to Solon." In the course of communications between the parties that followed, Machado was advised that she would be held to the terms of the Agreements and expected to pay the full tuition balance.

10. To date, Machado has declined to pay the tuition balances, which total $56,800 and are due and payable as set forth in the statements attached as Exhibits 4 and 5, which are true and accurate duplicates of those business records.

{¶ 21} Based on the foregoing, it is evident that Hawken presented Greene's affidavit to (1) authenticate the relevant Enrollment Agreements based on her position at Hawken and her familiarity with the school's business records, (2) to

verify the date agreements were executed, (3) to verify the date Machado provided notice of unenrollment, (4) to verify Machado's failure to pay the outstanding tuition balance for the 2021-2022 academic school year, and (5) generally describe Hawken's budgetary process. Contrary to Machado's assertion on appeal, Greene did not present herself as an expert in the field of accounting or damages. (Greene depo. at p. 52.) Rather, Greene was an authenticating witness. Her averments concerning Hawken's business records, budgetary procedure, and enrollment figures from the 2021-2022 academic school year were matters within her personal knowledge as an employee in the business office. The fact that Hawken identified O'Neil as its "authorized representative" for the purposes of Civ.R. 30(B) does not diminish Greene's averments concerning issues within her personal knowledge as an employee at Hawken.

{¶ 22} Similarly, we find no material inconsistency or contradiction between Greene's averments and her subsequent deposition testimony. In each instance, Greene stated that she was employed in Hawken's business department and is familiar with the school's enrollment and budgetary process. Based on her personal knowledge and experience, Greene expressed that the damages sought by Hawken were based on the terms and conditions of the Enrollment Agreements because it is "not possible" to quantify the damages caused by an untimely unenrollment. (Greene affidavit at ¶ 8; Greene depo. at p. 39, and 73.) Having reviewed the relevant evidentiary materials in their entirety, we find no reasonable basis to suggest that Greene's supporting affidavit amounted to a "sham" as Machado suggests.

Accordingly, the trial court did not abuse its discretion by denying Machado's motion to strike.

{¶ 23} The second assignment of error is overruled.

## B. Motion for More Definite Statement

{¶ 24} In the third assignment of error, Machado argues the trial court erred in denying her motion for a more definite statement pursuant to Civ.R. 12(E). Machado contends that Hawken's complaint was "defective" and did not sufficiently articulate "how the contract was breached."

{¶ 25} We review a ruling on a motion for a more definite statement under an abuse-of-discretion standard. *Sazima v. Chalko*, 86 Ohio St.3d 151, 154, 712 N.E.2d 729 (1999). As stated, an abuse of discretion occurs when a trial court's decision is "unreasonable, arbitrary, or unconscionable." *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, 218 N.E.3d 891, ¶ 9, citing *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶ 26} "Ohio is a notice-pleading state, [and] Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity." *Cincinnati v. Beretta USA Corp.*, 95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136, ¶ 29. Civ.R. 8(A) requires a complaint to contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled. Civ.R. 12(E) allows a party to move for a more definite statement if a pleading is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading * * *."

{¶ 27} As discussed in further detail below, a cause of action for breach of contract generally "requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 152 Ohio St.3d 453, 2018-Ohio-15, 97 N.E.3d 458, ¶ 41.

{¶ 28} In this case, Hawken alleged in its complaint that Machado executed the Enrollment Agreements on or about January 15, 2021, to secure her children's enrollment at the private school for the 2021-2022 academic school year. The complaint further alleged that Machado inexcusably breached the express terms and conditions of each agreement by failing "to make payments as agreed for [G.M.] in the amount of $30,350.00 and [J.M.] in the amount of $26,450.00 for a combined balance due and owing of $56,800.00." Finally, Hawken alleged that Machado's "breach of the Agreements has damaged plaintiff in the amount of $56,800.00."

{¶ 29} Viewing the pleading in its entirety, we find the complaint is not vague or ambiguous and alleges sufficient operative facts to support a breach-of-contract claim. The complaint provided fair notice of the nature of the action and attached copies of the contracts under which the claim arose. *See* Civ.R. 10. Under these circumstances, the trial court did not abuse its discretion by denying Machado's motion for a more definite statement.

{¶ 30} The third assignment of error is overruled.

## C. Summary Judgment

{¶ 31} In the first assignment of error, Machado argues the trial court erred in granting summary judgment in favor of Hawken while simultaneously denying her competing motion for summary judgment. Machado contends that she was entitled to a judgment as a matter of law because the evidentiary materials attached to her motion established that (1) she had no obligation to comply with deadlines set forth in Section 7 of the Enrollment Agreements, and (2) the Enrollment Agreements "do not contain liquidated damage clauses, but unenforceable, unlawful, and unreasonable penalties."

### 1. Standard of Review

{¶ 32} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, the party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998).

{¶ 33} The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264

(1996). Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein,* 76 Ohio St.3d 383, 667 N.E.2d 1197 (1996).

## 2. Breach of Contract

{¶ 34} As stated, Hawken's complaint alleged that Machado breached the express terms of the Enrollment Agreements by failing to make tuition and fee payments in the amount of $56,800. A breach of contract is established when a party shows (1) the existence of a contract, (2) that the nonbreaching party performed on the contract, (3) that the breaching party failed to perform its contractual obligations without legal excuse, and (4) the nonbreaching party suffered damages flowing from the breach. *Holliday v. Calanni Ents.*, 2021-Ohio-2266, 175 N.E.3d 663, ¶ 20 (8th Dist.), citing *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (2d Dist.1994).

{¶ 35} "Contract formation requires an offer, acceptance, consideration, and mutual assent between two or more parties with the legal capacity to act." *Widok v. Estate of Wolf*, 8th Dist. Cuyahoga No. 108717, 2020-Ohio-5178, ¶ 52, citing *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16. "'A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.'" *Kertes Ents., L.L.C. v. Sanders*, 8th Dist. Cuyahoga No. 109584, 2021-Ohio-4308, ¶ 19, quoting *Kostelnik* at ¶ 16. The essential terms of a

contract are the "identity of the parties to be bound, the subject matter of the contract, consideration, a quantity term, and a price term." *Fairfax Homes, Inc. v. Blue Belle, Inc.*, 5th Dist. Licking No. 2007CA00077, 2008-Ohio-2400, ¶ 19, citing *Alligood v. Procter & Gamble Co.*, 72 Ohio App.3d 309, 594 N.E.2d 668 (1st Dist.1991). "In order to declare the existence of a contract, both parties to the contract must consent to its terms * * *; there must be a meeting of the minds of both parties * * *; and the contract must be definite and certain." *Episcopal Retirement Homes v. Ohio Dept. of Indus. Relations.*, 61 Ohio St.3d 366, 369, 575 N.E.2d 134 (1991).

### a. Liability under the Enrollment Agreements

{¶ 36} In this case, Machado does not dispute that she electronically executed the Enrollment Agreements on January 15, 2021, and subsequently cancelled her children's enrollment at Hawken after the designated cancellation period had passed. Nevertheless, she challenges the trial court's interpretation and application of Sections 6 and 7 of the Enrollment Agreements.

{¶ 37} The legal standards for the interpretation of contracts are well established. Ohio courts seek to give effect to the intent of the parties, and we presume that the intent of the parties is reflected in the plain language of the contract. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Thus, if the language of a contract is plain and unambiguous, we enforce the terms as written, and we may not turn to evidence outside the four corners of the contract to alter its meaning. *See id.*; *Aultman Hosp. Assn. v.*

*Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989) ("Intentions not expressed in the writing are deemed to have no existence and may not be shown by parol evidence."). When considering the language of a particular contractual provision, "[c]ommon words * * * will be given their ordinary meaning unless manifest absurdity results or unless some other meaning is clear from the face or overall contents of the agreement." *Cincinnati Ins. Co. v. Anders*, 99 Ohio St.3d 156, 2003-Ohio-3048, 789 N.E.2d 1094, ¶ 34, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶ 38} On appeal, Machado suggests that she had no contractual obligation to pay the full amount of tuition and fees designated in the Enrollment Agreements because "the deadline Hawken relied upon (Section 7 of the Enrollment Agreements) does not apply to [her]." Machado summarizes her position as follows:

> Section 7 of Hawken's Enrollment Agreements with Machado (unlawfully) states:
>
> > "If enrollment for the 2021-2022 school year is cancelled between May 1 and before July 1, 2021, Parents are obligated to pay fifty percent (50%) of the annual tuition and fees. If enrollment is cancelled on or after July 1, 2021, Parents are obligated to pay one hundred percent (100%) of the annual tuition and fees."
>
> However, Section 7 does not even apply. Perhaps because it continually revises its Enrollment Agreements * * * Hawken glosses over Section 6 of Machado's Enrollment Agreements which states:
>
> > "If this agreement is entered into on or after May 1, 2021, the Parent is liable for the tuition and fees as outlined in Section 7 below."
>
> As the Machado's Enrollment Agreements were entered into on February 1, 2021 (well before May 1, 2021) Section 7 does not apply.

Thus, Machado was under no obligation to cancel before July 1st. The penalties in Section 7 (which are unlawful anyway) do not apply to Machado. * * * As Section 7 (and its arbitrary deadlines) does not even apply, Hawken's argument was frivolous. Minimally, this language is ambiguous and confusing and ambiguous [sic], which must be construed against Hawken.

{¶ 39} After careful examination, we find no merit to Machado's interpretation of the agreements or her disregard of the controlling language in Section 6. In this case, Section 6 of the Enrollment Agreements unambiguously provides that a parent who enrolls his or her child into Hawken before May 1, 2021, is "liable for the *entire year's tuition* upon the signing of [the] Agreement, unless a written notice of cancellation is delivered to the School on or before May 1, 2021." (Emphasis added.) By executing the agreements in January 2021, Machado reserved spots for her children in Hawken's third and seventh-grade classes in exchange for a $1,500 nonrefundable deposit and a promise to pay the balance of the tuition later that year in accordance with the payment schedule set forth under Section 8 of each agreement. The Enrollment Agreements provided Machado the option to cancel the agreements and withdraw her children from the school without having to pay the rest of the tuition if she did so prior to May 1, 2021. By the express terms of Section 6, Machado's ability to unilaterally repudiate the agreement without further payment obligations expired on May 1, 2021.

{¶ 40} Notwithstanding the clear implications of Section 6, the agreements further clarified in Section 7 that a parent's withdrawal of the student "after the period for cancellation of [the] Agreement has expired, whether the result of * * *

move/transfer * * * does not relieve the parent of the responsibility for payment of the entire year's tuition and fees." Contrary to Machado's interpretation of this provision, Section 7 is not exclusively limited to those parents who enroll a child after the May 1, 2021 cancellation deadline referenced in Section 6. Regardless of the date the agreement was executed, a parent is not relieved of liability merely because the unenrollment was premised on unforeseen circumstances, including a move or transfer of schools. The last sentence of Section 6 merely notes that when a parent executes an Enrollment Agreement after the designated "cancellation" date of May 1, 2021, the parent's liability for tuition and fees is subject to Section 7's distinction between cancellations occurring between May 1, 2021, and July 1, 2021, and those made after July 1, 2021. Contrary to Machado's assertion on appeal, the last sentence of Section 6 is inclusive of liability and not exclusive.

{¶ 41} In this case, Machado did not exercise her right to cancel the contract until after the May 1, 2021 date designated in Sections 6 had expired (and after the July 1, 2021 date referenced in Section 7). As a matter of law, Machado's failure to comply with her express obligations under the Enrollment Agreements following the untimely cancellations constituted a breach of the agreements. *See Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 380, 613 N.E.2d 183 (1993) ("Under a school reservation agreement, when a parent is given the option to cancel the agreement before a certain date without incurring liability for the full tuition and does not do so, the parent may become liable for the full tuition if the contract so provides. The parent's notification of cancellation, given after the option date, is

ineffective to discharge liability. Subsequent failure to make scheduled tuition payments constitutes a breach of contract."). Thus, if the liquidated damages provision contained in Section 9 is valid, we find the unambiguous terms of the Enrollment Agreements required Machado to pay the "entire" annual tuition and fees designated in each child's enrollment agreement.

### b. Liquidated-Damages Clause

{¶ 42} Next, Machado contends that the Enrollment Agreements do not contain an enforceable liquidated-damages clause. Machado does not dispute that Section 9 of each Enrollment Agreement expressly provides that "the parent further agrees that the total amount * * * due and payable to the school *shall be considered as agreed upon liquidated damages between the parties*." (Emphasis added.) Machado suggests, however, that the provision constitutes an unenforceable and invalid penalty. In support of this position, Machado asserts that damages in the amount of $56,800 were disproportionate to the actual damages because "Hawken suffered no damages; yet made more money in tuition in 2021-2022 than in the prior year."

{¶ 43} "[L]iquidated damages are damages that the parties to a contract agree upon, or stipulate to, as the actual damages that will result from a future breach of the contract." *Boone Coleman Constr., Inc. v. Piketon*, 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, ¶ 11, citing *Sheffield-King Milling Co. v. Domestic Science Baking Co.*, 95 Ohio St. 180, 183, 115 N.E. 1014 (1917). "'"The effect of a clause for stipulated damages in a contract is to substitute the amount agreed upon

as liquidated damages for the actual damages resulting from breach of the contract, and thereby prevents [sic] a controversy between the parties as to the amount of damages.'"'" *Id.* at ¶ 12, quoting *Dave Gustafson & Co., Inc. v. South Dakota*, 83 S.D. 160, 164, 156 N.W.2d 185 (1968), quoting 22 American Jurisprudence 2d, Damages, Section 235, at 321 (1965). "Put another way, 'a liquidated damages clause in a contract is an advance settlement of the anticipated actual damages arising from a future breach.'" *Id.*, quoting *Carrothers Constr. Co., L.L.C. v. S. Hutchinson*, 288 Kan. 743, 754, 207 P.3d 231 (2009).

{¶ 44} "As a general rule, parties are free to enter into contracts that contain provisions which apportion damages in the event of default." *Lake Ridge Academy*, 66 Ohio St.3d at 381, 613 N.E.2d 183. Thus, "'the law does not look with disfavor upon "liquidated damages" provisions in contracts. When they are fair and reasonable attempts to fix just compensation for anticipated loss caused by breach of contract, they are enforced.'" *Boone* at ¶ 14, quoting *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 92 L.Ed. 32 (1947). "The modern rule is 'to look with candor, if not with favor' upon liquidated-damages provisions in contracts when those provisions were 'deliberately entered into between parties who have equality of opportunity for understanding and insisting upon their rights.'" *Id.*, quoting *Wise v. United States*, 249 U.S. 361, 365, 39 S.Ct. 303, 63 L.Ed. 647 (1919).

{¶ 45} However, complete freedom of contract is not permitted for public policy reasons, such as when the stipulated damages actually constitute a penalty. In general, "'[t]he characteristic feature of a penalty is its lack of proportional

relation to the damages which may actually flow from failure to perform under a contract.'" *Lake Ridge Academy* at 381, quoting *Garrett v. Coast & S. Fed. S. & L. Assn.*, 9 Cal.3d 731, 739, 108 Cal.Rptr. 845, 511 P.2d 1197 (1973). "A penalty is designed to coerce performance by punishing nonperformance; its principal object is not compensation for the losses suffered by the nonbreaching party." *Id.*

{¶ 46} In *Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 465 N.E.2d 392 (1984), the Ohio Supreme Court approved the test to be used when determining whether such a clause constitutes liquidated damages or a penalty.

> "Where the parties have agreed on the amount of damages, ascertained by estimation and adjustment, and have expressed this agreement in clear and unambiguous terms, the amount so fixed should be treated as liquidated damages and not as a penalty, if the damages would be (1) uncertain as to amount and difficult of proof, and if (2) the contract as a whole is not so manifestly unconscionable, unreasonable, and disproportionate in amount as to justify the conclusion that it does not express the true intention of the parties, and if (3) the contract is consistent with the conclusion that it was the intention of the parties that damages in the amount stated should follow the breach thereof."

*Id.* at 29, quoting *Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894 (1925), paragraph two of the syllabus. Thus, "valid and enforceable liquidated-damages provisions are those intended by the parties to give reasonable compensation for damages, but provisions that impose amounts that are 'manifestly inequitable and unrealistic' are deemed unenforceable penalties." *Boone,* 145 Ohio St.3d 450, 2016-Ohio-628, 50 N.E.3d 502, at ¶ 19, citing *Honeywell* at 28.

{¶ 47} Following the release of *Honeywell*, the Ohio Supreme Court provided additional guidance for assessing contractual provisions that apportion damages in the event of default. The court explained, in relevant part:

> Determining whether stipulated damages are punitive or liquidated is not always easy: [I]t is necessary to look to the whole instrument, its subject-matter, the ease or difficulty of measuring the breach in damages, and the amount of the stipulated sum, not only as compared with the value of the subject of the contract, but in proportion to the probable consequences of the breach, and also to the intent of the parties ascertained from the instrument itself in the light of the particular facts surrounding the making and execution of the contract. *Jones v. Stevens*, 112 Ohio St. 43, 146 N.E. 894 (1925), paragraph one of the syllabus. "Neither the parties' actual intention as to its validity nor their characterization of the term as one for liquidated damages or a penalty is significant in determining whether the term is valid." 3 Restatement of Contracts, supra, at 159, Section 356, Comment c. *See Samson Sales, Inc. v. Honeywell, Inc.*, 12 Ohio St.3d 27, 28, 465 N.E.2d 392, 394 (1984). Thus, when a stipulated damages provision is challenged, the court must step back and examine it in light of what the parties knew at the time the contract was formed and in light of an estimate of the actual damages caused by the breach. If the provision was reasonable at the time of formation and it bears a reasonable (not necessarily exact) relation to actual damages, the provision will be enforced. *See* 3 Restatement of Contracts, supra, at 157, Section 356(1).

*Lake Ridge Academy*, 66 Ohio St.3d at 381-382, 613 N.E.2d 183.

{¶ 48} The determination as to whether a particular clause constitutes liquidated damages or a penalty is one of law. *Id.* at 380. Therefore, this court will apply a de novo standard of review. *See Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 76 Ohio St.3d 521, 668 N.E.2d 889 (1996), citing *Indus. Energy Consumers of Ohio Power Co. v. Pub. Util. Comm.*, 68 Ohio St.3d 559. 563, 629 N.E.2d 423 (1994).

{¶ 49} Consistent with the factual circumstances presented in this case, *Lake Ridge Academy* stemmed from a breach-of-contract action pursued by a private school against a student's father for unpaid tuition and fees. The father had signed a contract with the school to enroll his son for the 1989-1990 school year. The contract contained a cancellation date of August 1, 1989, and stated that if enrollment was cancelled after such date, the parent or guardian for the child would be responsible for the full tuition, books, and supplies charges. On August 7, 1989, the defendant cancelled the contract and the school sued for breach of contract, seeking the balance due under the contract.

{¶ 50} After the trial court entered judgment in favor of the defendant on the basis that he had substantially complied with the cancellation provision and the school was not harmed by the late withdrawal, the school appealed. The court of appeals reversed, finding that the defendant had breached the contract and that the clause requiring the defendant to pay the full tuition was not punitive, but rather constituted a valid liquidated-damages provision.

{¶ 51} In affirming the judgment of the court of appeals, the Ohio Supreme Court found that (1) defendant breached his contract with the private school by failing to make scheduled tuition payments after providing an untimely notice of cancellation of enrollment, and (2) the damages provision in the contract was a valid liquidated-damages clause. With respect to the latter, the *Lake Ridge Academy* Court applied the three-prong test adopted in *Honeywell* and concluded that the liquidated-damages provision was enforceable. The court found (1) damages were

uncertain as to amount and "difficult of proof" due to the "uncertain science" involved in a private institution's year-long budgeting process; (2) the contract as a whole was not so manifestly unconscionable, unreasonable, or disproportionate in amount as to justify the conclusion that it does not express the true intentions of the parties because (a) the parties negotiated at arm's length and there was no evidence of coercion or duress, (b) the contract and the cancellation deadline was reasonable given the school's need to finalize its financial commitments and the amount of time given to the defendant to cancel the contract without penalty, and (c) damages in the amount of full tuition was not disproportionate to the school's actual damages, and (3) the plain and unambiguous language of the damages provision represented the intention of the parties.

{¶ 52} After careful consideration, we find the discussion in *Lake Ridge Academy* is persuasive and supports the conclusion that the damages provision contained in Hawken's Enrollment Agreements is a valid and enforceable liquidated-damages clause.

{¶ 53} First, when Machado and Hawken's agreement was finalized in February 2021, the damages Hawken might suffer as a result of a breach by Machado were "uncertain as to amount and difficult of proof." Similar to the circumstances assessed in *Lake Ridge Academy*, the record reveals that Hawken goes through a "lengthy multi-step budgeting process which begins each year in October." (Greene affidavit at ¶ 5.) As explained by Greene, Hawken's budgeting process relies extensively on the projected enrollments and the "pooled student 'net tuition

revenue,'" which is used to pay for staff salaries and benefits, department budgets, student materials, maintenance, improvements, and utilities. (Greene affidavit at ¶ 6, 8.) Thus, Hawken plans its yearly budget based upon its enrollment commitments for the following year and makes irreversible financial commitments to teachers and staff based upon such commitments. Greene clarified, however, that the budgeting process is not a "precise science" because it relies on educated guesswork and projections of numerous variables. (Greene affidavit at ¶ 8.) Collectively, the evidence attached to Hawken's motion for summary judgment established that, as with most private-educational institutions, the budgetary process implemented at Hawken relies on various uncertainties that would prevent the school from precisely calculating and proving the exact financial impact the lost tuition for each child would have on the overall budget.

{¶ 54} Second, we find the agreements, viewed in their entirety, are not so manifestly unconscionable, unreasonable, and disproportionate in amount to justify the conclusion that they do not reflect the true intention of the parties. In this case, Machado was familiar with Hawken's enrollment process and there is no evidence in the record to suggest that Machado was pressured or otherwise coerced into executing the Enrollment Agreements. Similarly, we are unable to conclude that the contents of the Enrollment Agreements, including the designated cancellation date, were unreasonable. Greene explained that the cancellation deadline was necessary because the budget for the upcoming school year was "largely finalized by the beginning of May." (Greene affidavit ¶ 5.) Full disclosure was provided as to the

consequences of an untimely withdrawal and Machado had several months after she executed the agreements to decide whether to cancel her children's enrollment at Hawken for the 2021-2022 academic school year. Lastly, we cannot say that damages in the amount of the full tuition are disproportionate to the actual damages suffered by Hawken. As noted by Greene, Hawken's third- and seventh-grade classes for 2021-2022 were underenrolled for their respective projected class sizes. (Greene affidavit at ¶ 6.) Thus, Hawken was unable to fulfill its projected net-tuition revenue despite relying on the enrollment figures when allocating resources necessary to support the school's educational mission for the 2021-2022 academic school year. While the precise amount of damages are necessarily difficult to ascertain, it is not unreasonable to conclude that the stipulated damages provision bore a proportionate (not necessarily exact) relationship to the actual damages sustained by Hawken. Thus, the stipulated damages were neither manifestly inequitable nor unrealistic.

{¶ 55} Finally, we find the language set forth in the terms and conditions of each Enrollment Agreement is so clear that we can only conclude that it represents the parties' intent. As previously stated, the relevant provision in the agreement states as follows:

> The Parent understands and agrees that the Student is enrolled for the entire school year, and *the Parent is liable for the entire year's tuition and fees upon the signing of this Agreement, unless written notice of cancellation is delivered to the School on or before May 1, 2021.*

(Emphasis added.) (Section 6, Enrollment Agreement.) When parties make mutual promises and integrate them "'into an unambiguous written contract, duly signed by them, courts will give effect to the parties' expressed intentions.'" *Lake Ridge Academy*, 66 Ohio St.3d at 384, 613 N.E.2d 183, quoting *Aultman*, 46 Ohio St.3d at 53, 544 N.E.2d 920. Contrary to Machado's bare assertions, we find no reason to believe that the plain language used in each agreement does not represent the intention of the parties.

{¶ 56} Based on the foregoing, we find the Enrollment Agreements contain a valid and enforceable liquidated-damages clause. *See Lake Ridge Academy* at 382-384; *see also W. Res. Academy v. Franklin*, 2013-Ohio-4449, 999 N.E.2d 1198 (5th Dist.); *Tremco Inc. v. Kent*, 8th Dist. Cuyahoga No. 70920, 1997 Ohio App. LEXIS 2367 (May 29, 1997). As discussed, Machado executed the Enrollment Agreements obligating her to pay tuition and fees in an amount totaling $59,630. Machado tendered nonrefundable deposits totaling $3,000, and subsequently made a payment in the amount of $830, leaving an unpaid balance of $56,800. In accordance with the express terms of each agreement, when Machado waited until July 21, 2021, to cancel her children's enrollment at the school for the 2021-2022 academic school year, reasonable minds could only reach the conclusion that Machado became liable for the entire balance due and owing. Accordingly, the trial court did not err by granting summary judgment in favor of Hawken and ordering Machado to pay $56,800, with interest at a rate of 6.17 % per annum, plus costs. *See Lake Ridge Academy*; *see also Sisters of the Holy Child Jesus at Old Westbury, Inc.*

*v. Corwin*, 51 Misc.3d 44, 48, 29 N.Y.S.3d 736 (N.Y. App. Term. 2016) ("Plaintiff private school was entitled to summary judgment on its complaint in an action seeking to recover the full amount of tuition and fees from defendants, who had signed a contract enrolling their child in the school, but, after expiration of the cancellation date in the contract, notified the school administrators of their decision to not have their child attend the school and ceased making payments."); *see also Pierre v. St. Benedict's Episcopal Day School*, 324 Ga.App. 283, 750 SE.2d 370 (2013); *Barrie School v. Patch*, 401 Md. 497, 933 A.2d 382 (2007); *St. Margaret's-McTernan School, Inc. v. Thompson*, 31 Conn.App. 594, 627 A.2d 449 (1993).

{¶ 57} The first assignment of error is overruled.

{¶ 58} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

KATHLEEN ANN KEOUGH, A.J., and
SEAN C. GALLAGHER, J., CONCUR