[Cite as *Semary v. Celebrezze*, 2025-Ohio-1549.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

| | | |
|---|---|---|
| GREORGEANNA M. SEMARY, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 114219 |
| LESLIE ANN CELEBREZZE, ET AL., | : | |
| Defendants-Appellees. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** May 1, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-984974

---

***Appearances:***

Zashin & Rich Co., LPA, and Stephen S. Zashin, Corey N. Thrush, and Rose A. Hayden, *for appellees*.

The Chandra Law Firm LLC, Subodh Chandra, Donald P. Screen, and Ethan M.B. Dawson, *for appellant*.

JOHN J. EKLUND, J.:

{¶ 1} Appellant, Georgeanna M. Semary, appeals the judgment of the Cuyahoga County Court of Common Pleas dismissing her Amended Complaint against Appellee, Leslie Ann Celebrezze.

{¶ 2} Appellant raises a single assignment of error, contending that the trial court erred in dismissing her Amended Complaint. Appellant argues that she satisfied Ohio's notice-pleading standard and that she adequately stated her claims.

{¶ 3} Having reviewed the record and the applicable law, we find that Appellant's assignment of error has merit. First, the trial court failed to properly apply Ohio's notice-pleading standard to Appellant's Amended Complaint and instead applied a heightened standard. Based on our independent review, Appellant's Amended Complaint satisfies Ohio's notice-pleading standard. Second, judgment on the pleadings was inappropriate. Construing the allegations in Appellant's Amended Complaint as true and in her favor, this court cannot say Appellant can prove no set of facts that would entitle her to relief.

{¶ 4} Therefore, the trial court erred by dismissing Appellant's Amended Complaint. We reverse the judgment of the Cuyahoga County Court of Common Pleas and remand for further proceedings.

**Substantive and Procedural History**

{¶ 5} At all relevant times, Celebrezze was the administrative judge of the Cuyahoga County Court of Common Pleas, Domestic Relations Division ("the DR court"). Appellant was her long-time judicial assistant. On September 5, 2023, Appellant filed a Complaint against Celebrezze and others. She alleges the following facts:

**{¶ 6}** Appellant became Celebrezze's judicial assistant upon the judge's election to the DR court in 2008. Over the years, they formed a close personal bond, and Celebrezze consistently gave Appellant highly positive performance evaluations.

**{¶ 7}** Celebrezze has known Mark Dottore since childhood. Celebrezze's father, who was also a judge, often appointed Dottore as a receiver in his cases. For many years, Celebrezze appointed Dottore or his daughter as a receiver in her cases. According to Appellant, she knew about and was witness to a years-long extramarital affair between Celebrezze and Dottore. Celebrezze also frequently discussed the relationship with Appellant.

**{¶ 8}** On April 19, 2023, Celebrezze received a letter from attorney Joseph Stafford demanding her recusal from a divorce case because of her relationship with Dottore, who was the receiver in the case.

**{¶ 9}** On April 28, 2023, Mark Puente, a reporter with The Marshall Project, visited the Cuyahoga County Clerk of Courts and reviewed many of Celebrezze's closed cases in which she had appointed Dottore or his daughter as receivers. The clerk's office informed Puente that Celebrezze's active case files were located in her chambers. Puente went to Celebrezze's chambers, where he encountered Appellant and asked to review a specific case file. Appellant first examined the case file to ensure it did not contain the judge's personal notes and that nothing was marked confidential or under seal. Finding nothing, she allowed Puente to review the file. Appellant made copies of certain documents at Puente's

request. As he left, Puente handed Appellant his business card, which identified him as a journalist.

{¶ 10} Appellant texted a copy of the business card to Celebrezze, but she did not respond. Minutes later, James Zak, the DR court's administrator, called Appellant and asked her to explain in detail her encounter with Puente.

{¶ 11} On May 1, 2023, Appellant received an email from Susan Sweeney, a DR court administrator, scheduling a meeting with Zak and Sweeney on May 3, 2023. At the May 3 meeting, Zak again asked Appellant to explain in detail what happened during her encounter with Puente. Zak then gave Appellant a document captioned, "Written Counseling," that stated Appellant had given confidential information to Puente without first notifying and receiving permission from Celebrezze or Zak in violation of the Employee Handbook and the Code of Ethics. Appellant told Zak and Sweeney that she had done nothing wrong and had not handled the matter any differently than she had over the previous 15 years. She signed the Written Counseling to acknowledge receipt.

{¶ 12} On May 26, 2023, Justin Seeton, the DR court's deputy administrator, summoned Appellant to his office. Present in Seeton's office was Serpil Ergun, the DR court's executive director of judicial operations. At the meeting, Seeton and Ergun told Appellant she was being reassigned to the position of scheduler.

{¶ 13} On June 1, 2023, Appellant returned from a planned vacation and started her new position. That same day, The Marshall Project published Puente's

investigative report about Celebrezze and Dottore, entitled "A Judge, a Kiss, and $450,00-plus in Court Work." According to the article, Attorney Stafford's client had hired a private investigator, who photographed Celebrezze and Dottore kissing on the lips outside of a restaurant. The article also stated that Dottore and his daughter were listed as receiver in eight of Celebrezze's cases; Dottore served as Celebrezze's campaign treasurer when she ran for judge in 2008, with his business office being listed as her campaign headquarters; and Celebrezze and Dottore had met three to four times each week at various locations, including at Dottore's office and home and at restaurants.

{¶ 14} On June 5, 2023, Appellant received an email from Zak scheduling a meeting for June 7. Appellant sought to postpone the meeting so she could have an attorney present. Zak approached Appellant in a hallway and handed her an envelope with a letter informing her that her annual salary had been reduced by nearly $20,000. The letter stated that Appellant had been advised of her salary reduction during the May 26 meeting.

{¶ 15} According to Appellant, she was "persona non grata" at the DR court following her demotion and pay cut. In addition, Celebrezze began disparaging Appellant to court staff. For instance, Celebrezze suggested Appellant was providing information to Attorney Stafford and that Attorney Stafford was going to buy Appellant a house. Celebrezze also instructed her judicial staff to "spy" on Appellant. On August 14, 2023, because of "intolerable working conditions," Appellant submitted her resignation with her last day being September 8, 2023.

{¶ 16} Appellant's Complaint asserted the following eight counts against Celebrezze, Zak, Sweeney, Seeton, and Ergun:

{¶ 17} Count 1: civil liability pursuant to R.C. 2307.60 for witness intimidation and retaliation under R.C. 2921.04(A), R.C. 2921.04(B)(2), and 18 U.S.C. 1513(b)(2). Appellant alleged that she is a witness to Celebrezze's corruption-related acts under R.C. 102.03(D), 102.03(E), 2921.42(A)(1), 2921.42(A)(4), 18 U.S.C. 1346, and R.C. 2923.32(A)(1).

{¶ 18} Count 2: civil liability pursuant to R.C. 2307.60 for retaliation under R.C. 2921.05(A).

{¶ 19} Count 3:  civil liability pursuant to R.C. 2307.60 for intimidation under R.C. 2921.03(A).

{¶ 20} Count 4: civil liability pursuant to R.C. 2307.60 for tampering with records under R.C. 2913.42(A)(1) and (2).

{¶ 21} Count 5: civil liability pursuant to R.C. 2307.60 for falsification under R.C. 2921.13(A)(2) and (3).

{¶ 22} Count 6: civil liability pursuant to R.C. 2307.60 for dereliction of duty under R.C. 2921.44(E).

{¶ 23} Count 7: civil liability pursuant to R.C. 2307.60 for interfering with Appellant's civil rights under R.C. 2921.45(A).

{¶ 24} Count 8: intentional infliction of emotional distress.

{¶ 25} Appellant requested declaratory judgment, injunctive relief, and compensatory damages for economic and non-economic damages, including for

pain and suffering; emotional distress; loss of reputation, loss of salary, wages and benefits including pension; other terms, privileges and conditions of employment; and constructive discharge.

{¶ 26} On November 6, 2023, Celebrezze filed an Answer and a Civ.R. 12(B)(6) Motion to Dismiss Counts 1 through 3 and 6 through 8.

{¶ 27} On February 1, 2024, Appellant filed an Amended Complaint asserting seven counts. Relevant here, Appellant deleted former Count 6 and renumbered former Counts 7 and 8. On the same date, Appellant filed a brief in opposition to Celebrezze's Motion to Dismiss.

{¶ 28} On March 18, 2024, Celebrezze filed an answer to Appellant's Amended Complaint.

{¶ 29} On April 2, 2024, Appellant filed a Motion to Dismiss the other defendants, which the trial court granted on April 4, 2024.

{¶ 30} On April 19, 2024, Celebrezze filed a Civ.R. 12(C) Motion for Judgment on the Pleadings on all counts. Celebrezze's motion incorporated some of the arguments from her prior Motion to Dismiss. Appellant filed a brief in opposition on June 7, 2024, and Celebrezze filed a reply on June 24, 2024.

{¶ 31} On July 30, 2024, the trial court filed a 24-page judgment entry dismissing Appellant's Amended Complaint.

{¶ 32} On August 1, 2024, Appellant timely appealed. She raises the following assignment of error: "The trial court erred in granting Appellee Celebrezze's motions to dismiss and for judgment on the pleadings, because

Appellant Semary's amended complaint, in alleging both the 'criminal act' and 'resulting injury' elements of R.C. 2307.60 in detail, meets Ohio's notice-pleading standard."

**App.R. 16**

{¶ 33} As an initial matter, Celebrezze argues that this court should summarily dismiss Appellant's appeal because her brief does not comply with App.R. 16(A)(3). That rule of procedure provides, "The appellant shall include in its brief, under the headings and in the order indicated, . . . [a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected."

{¶ 34} Appellant has asserted one assignment of error that contains multiple arguments. Within each of her arguments, Appellant references the applicable page(s) of the trial court's judgment. *See* App.R. (A)(7). Therefore, Appellant's brief substantially complies with App.R. 16, and we will consider the merits of her appeal.

**Standard of Review**

{¶ 35} Appellant assigns error to the trial court's granting of Celebrezze's Motion to Dismiss filed on November 6, 2023, *and* her Motion for Judgment on the Pleadings filed on April 19, 2024. However, in between those motions, on February 1, 2024, Appellant filed an Amended Complaint.[1] Once an amended complaint is filed, a motion challenging an original complaint becomes moot. *See Weiler v.*

---

[1] Celebrezze filed her first motion immediately after filing her answer. Therefore, her first motion is more accurately described as a Civ.R. 12(C) Motion for Judgment on the Pleadings rather than a Civ.R. 12(B)(6) Motion to Dismiss.

*Osborn Eng. Co.*, 2023-Ohio-619, ¶ 25 (8th Dist.); *Vanek v. Geauga Soil & Water Conservation Dist.*, 2020-Ohio-3950, ¶ 9 (9th Dist.). Therefore, we construe the trial court's judgment as granting Celebrezze's Motion for Judgment on the Pleadings filed on April 9, 2024.

{¶ 36} Appellate review of a trial court's ruling on a motion for judgment on the pleadings is de novo without any deference to the trial court's judgment. *Yankovitz v. Greater Cleveland Regional Transit Auth.*, 2023-Ohio-2584, ¶ 22 (8th Dist.). Civ.R. 12(C) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A motion for judgment on the pleadings raises only questions of law, testing the legal sufficiency of the claims asserted. *Crenshaw v. Howard*, 2022-Ohio-3914, ¶ 13 (8th Dist.). Where, as here, the relevant pleadings are a complaint and answer, determination of a motion for judgment on the pleadings is restricted solely to the allegations in the complaint and answer, as well as any documents properly attached as exhibits to those pleadings. *Id.* "Dismissal is appropriate under Civ.R. 12(C) when (1) the court construes as true, and in favor of the nonmoving party, the material allegations in the complaint and all reasonable inferences to be drawn from those allegations and (2) it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him or her to relief." *Reister v. Gardner*, 2020-Ohio-5484, ¶ 17.

**Notice Pleading**

{¶ 37} Appellant first argues that the trial court erred in dismissing her Amended Complaint because her allegations satisfied Ohio's notice-pleading standard.

{¶ 38} "Ohio is a notice-pleading state." *Maternal Grandmother v. Hamilton Cty. Dept. of Job & Family Svcs.*, 2021-Ohio-4096, ¶ 10. Civ.R. 8(A) provides that "[a] pleading that sets forth a claim for relief . . . shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(E)(1) provides that "[e]ach averment of a pleading shall be simple, concise, and direct. No technical forms of pleading or motions are required."

{¶ 39} The Supreme Court of Ohio has stated that "'[t]he purpose of "notice" pleading is clear: "to simplify pleadings to a 'short and plain statement of the claim' and to simplify statements of the relief demanded, Civ.R. 8(A), to the end that the adverse party will receive fair notice of the claim and an opportunity to prepare his response thereto."'" *Wells Fargo Bank, N.A. v. Horn*, 2015-Ohio-1484, ¶ 13, quoting *Anderson v. BancOhio Natl. Bank,* 1985 WL 8844, *1 (1st Dist. Nov. 27, 1985), quoting *Fancher v. Fancher*, 8 Ohio App.3d 79, 83 (1st Dist. 1982). The court has held that "outside of a few specific circumstances, such as claims involving fraud or mistake, *see* Civ.R. 9(B), a party will not be expected to plead a claim with particularity. Rather, 'a short and plain statement of the claim' will typically do. Civ.R. 8(A)." *Maternal Grandmother* at ¶ 10. This is because "'a plaintiff is not

required to prove his or her case at the pleading stage.'" *Id*. at ¶ 16, quoting *York v. Ohio State Highway Patrol*, 60 Ohio St.3d 143, 144-145 (1991).

{¶ 40} In the event "a party cannot reasonably be required to frame a responsive pleading" because "a pleading . . . is so vague or ambiguous," the party "may move for a definite statement before interposing his responsive pleading." Civ.R. 12(E). *See Hawken School v. Machado*, 2024-Ohio-1060, ¶ 26 (8th Dist.).

{¶ 41} In Counts 1 through 6, Appellant asserted claims pursuant to R.C. 2307.60(A)(1), which provides, in relevant part, "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law . . . ." The Supreme Court of Ohio has held that "R.C. 2307.60(A)(1), by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act." *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 10. The court has also held that the statute does not require proof of an underlying criminal conviction. *Buddenberg v. Weisdack*, 2020-Ohio-3832, ¶ 11.

{¶ 42} Despite acknowledging Ohio's notice-pleading standard, the trial court articulated a heightened pleading standard for Appellant's R.C. 2307.60 claims. Specifically, the trial court stated, (1) "However spar[s]e, [Appellant's] amended complaint must allege the elements of the alleged criminal act," and (2) "Conclusory allegations in a complaint without specific factual allegations are insufficient to make out a criminal act upon which a R.C. 2307.60(A) claim is based."

{¶ 43} In support of its first proposition, the trial court cited two Sixth District cases, *Hoerig v. Bowling Green State Univ.*, 2023-Ohio-3189 (6th Dist.), and *Med. Mut. of Ohio v. FrontPath Health Coalition*, 2023-Ohio-243 (6th Dist.). Although not acknowledged, the trial court actually cited the *concurring* opinion in *Hoerig*. The lead opinion in *Hoerig* affirmed the dismissal of appellants' claims based on mootness without any discussion of R.C. 2307.60. *Id.* at ¶ 18. The concurring judge, by contrast, would have affirmed based on lack of standing. *Id.* at ¶ 22 (Osowik, J., concurring). In discussing R.C. 2307.60, the concurring judge opined that "the elements for the alleged criminal offense . . . must be *established* by appellants." (Emphasis added.) *Id.* at ¶ 53 (Osowik, J., concurring). Thus, the concurring opinion in *Hoerig* does not state that a plaintiff must "allege" the elements of the underlying crime.

{¶ 44} In *FrontPath*, the plaintiff asserted a R.C. 2307.60 claim based on the defendant's alleged crime of complicity to violate R.C. 2921.42(A)(1) (having an unlawful interest in a public contract). *Id.* at ¶ 23. The Sixth District found that the plaintiff had adequately pleaded a claim, stating that plaintiff's allegations, "while sparse, satisfy the elements of complicity to commit a violation of R.C. 2921.42(A)(1)." *Id.* Thus, the court in *FrontPath* did not state that a plaintiff must allege the elements of the underlying crime to adequately plead a R.C. 2307.60 claim. In fact, the court quoted the Supreme Court of Ohio's precedent regarding "the liberal requirements of notice pleading":

"A party is not required to plead the legal theory of recovery or the consequences which naturally flow by operation of law from the legal relationships of the parties. 'The rules make clear that a pleader is not bound by any particular theory of a claim but that the facts of the claim as developed by the proof establish the right to relief.'" *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 526 . . ., quoting McCormac, Ohio Civil Rules Practice (2 Ed.1992) 102, Section 5.01.

. . .

"A complaint should not be dismissed for failure to state a claim merely because the allegations do not support the legal theory on which the plaintiff relies. Instead, a trial court must examine the complaint to determine if the allegations provide for relief on any possible theory." *Fahnbulleh v. Strahan*, 73 Ohio St.3d 666, 667 . . . (1995).

*FrontPath* at ¶ 22.

{¶ 45} In her answer brief, Celebrezze cites *Wilkinson v. Dayton*, 2024-Ohio-180 (2d Dist.), as purportedly "upholding [the] trial court's dismissal of [a] R.C. 2307.60 claim because [the] plaintiff did not plead facts establishing the elements of the underlying criminal act." Celebrezze does not cite the specific paragraph(s) of *Wilkinson* upon which she relies. However, the portion of *Wilkinson* that discusses R.C. 2307.60 does not state this proposition. *See id.* at ¶ 28-36.

{¶ 46} In support of its second proposition — i.e., that "[c]onclusory allegations in a complaint without specific factual allegations are insufficient to make out a criminal act upon which a R.C. 2307.60(A) claim is based" — the trial court cited the Tenth District's decision in *Becker v. Cardinal Health, Inc.*, 2021-Ohio-3804 (10th Dist.). In that case, the plaintiffs asserted R.C. 2307.60 claims based on Cardinal Health's alleged violations of R.C. 2925.02 (corrupting another

with drugs) and R.C. 2925.03 (trafficking in drugs) for its wholesale distribution of prescription opioids. *Id.* at ¶ 13-14. The Tenth District noted that those statutes "specifically exempt wholesale distributors from liability when the distributor's conduct is in accordance with" particular chapters of the Revised Code. *Id.* at ¶ 13. The court found that the plaintiffs' complaint contained a "conclusory allegation" that Cardinal Health did not comply with the listed chapters "without specific facts explaining how" it failed to do so. *Id.* The court determined that "[w]ithout any such alleged facts, Cardinal Health is exempted from liability." *Id.*

{¶ 47} *Becker* involved pleading to overcome an express statutory exemption; therefore, it does not directly support the trial court's proposition. Further, the Tenth District's reference to "conclusory allegations" appears to originate from the Supreme Court of Ohio's decision in *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190 (1988). *See Becker* at ¶ 13, citing *Morrow v. Reminger & Reminger Co. L.P.A.*, 2009-Ohio-2665, ¶ 7 (10th Dist.), citing *Mitchell* at 192. In *Mitchell*, the court stated that "[u]nsupported conclusions that appellant committed an intentional tort are not taken as admitted by a [Civ.R. 12(B)(6)] motion to dismiss and are not sufficient to withstand such a motion." *Id.* at 193. In applying that standard, the court explained that "[v]irtually every injury in the workplace can be made the basis for a claim of intentional tort if the unsupported conclusion that the employer intended to injure the employee is allowed to prevail over factual allegations which preclude the possibility of intentional tort." *Id.* The court later described *Mitchell* as imposing "a *heightened* pleading burden on plaintiffs" in the

context of an employer intentional-tort claim. (Emphasis added.) *Fletcher v. Univ. Hosps. of Cleveland*, 2008-Ohio-5379, ¶ 12; s*ee Byrd v. Faber*, 57 Ohio St.3d 56, 60 (1991) ("We then proceeded [in *Mitchell*] to carve out a *heightened* standard of review for Civ.R. 12(B)(6) motions in the intentional tort context."). (Emphasis added.)

{¶ 48} In her answer brief, Celebrezze asserts that "even though Ohio's notice-pleading standard is liberal, it 'does not permit mere speculation,'" quoting *Lombardo v. Best W. Hotels & Resorts*, 2023-Ohio-2300 (8th Dist.). However, the panel majority in *Lombardo* relied on Justice DeWine's separate opinion in *Maternal Grandmother*, 2021-Ohio-4096, wherein he stated, "Ohio courts have made clear that mere speculation, unsupported by operative facts, is not enough to state a claim." *Id*. at ¶ 29 (DeWine, J., concurring in judgment only). *See Lombardo* at ¶ 19. The majority opinion in *Maternal Grandmother*, which is the controlling authority, does not include that requirement. *See id*. at ¶ 10-13.

{¶ 49} Since no binding legal authority imposes a heightened pleading standard for R.C. 2307.60 claims, Ohio's notice-pleading standard governs. Therefore, Appellant was required to set forth "a short and plain statement" of her R.C. 2307.60 claims to provide fair notice to Celebrezze. Civ.R. 8(A); *Horn*, 2015-Ohio-1484, at ¶ 13. Appellant was not required to use any technical form of pleading. Civ.R. 8(E).

{¶ 50} A review of the trial court's judgment entry indicates it did not properly apply Ohio's notice-pleading standard in several instances. In Count 1,

Appellant alleged that Celebrezze committed witness intimidation under R.C. 2921.04(A), which prohibits, in relevant part, "knowingly attempt[ing] to intimidate a witness to a criminal or delinquent act by reason of the person being a witness to that act." Appellant alleged she was a witness to Celebrezze's corruption-related crimes under R.C. 102.03(D), 102.03(E), 2921.42(A)(1), 2921.42(A)(4), 18 U.S.C. 1346, and R.C. 2923.32(A)(1).[2]

{¶ 51} The trial court found that R.C. 2921.04(A) "requires a second criminal act of which the plaintiff was a witness." The court then examined the elements of each corruption-related statute. R.C. 102.03(D) and (E) prohibit a "public official or employee" from "us[ing] or authoriz[ing] the use of the authority or influence of office or employment to secure anything of value or the promise or offer of anything of value" or "solicit[ing] or accept[ing] anything of value," if the thing of value "is of such a character as to manifest a substantial and improper influence upon the public official or employee with respect to that person's duties." The trial court found that Appellant's allegations were "not sufficient" because they were "only speculative, conclusory allegations" that Dottore "compensated Judge Celebrezze for awarding him the receivership appointments" or that Celebrezze "accepted anything of value"

---

[2] Semary relies on *State v. Sanders*, 2019-Ohio-2566 (8th Dist.), in support of her assertion that Celebrezze's commission of the "underlying corruption-related crimes" is not an essential element of Semary's witness intimidation claims. In *Sanders*, this court, sitting en banc, held that "the occurrence of the underlying criminal or delinquent act is not an essential element of the offense of intimidation that must be proven beyond a reasonable doubt." *Id.* at ¶ 10. We do not find *Sanders* to be dispositive. Since *Sanders* was a criminal case, it necessarily did not involve civil notice pleading or civil claims asserted pursuant to R.C. 2307.60.

from Dottore "that would manifest a substantial and improper influence upon her public office."

{¶ 52} 18 U.S.C. 1346 provides that "[f]or the purposes of this chapter [18 U.S.C. Ch. 63], the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." The trial court found that this provision is a "definitional section" and that "[p]ointing to a chapter of the United States criminal laws and alleging there is a violation in there somewhere is not sufficient" under Civ.R. 8(A).

{¶ 53} The trial court also found that "intimidation" under R.C. 2921.04(A) requires "creating fear of negative consequences for the purpose of influencing [Appellant's] future behavior." The court found that Appellant did not allege the "future behavior" that Celebrezze "wanted to influence."

{¶ 54} In Count 3, Appellant alleged that Celebrezze committed intimidation under R.C. 2921.03(A), which prohibits "attempt[ing] to influence, intimidate, or hinder a public servant" or a "witness involved in a civil action or proceeding in the discharge of" his or her "duties." The trial court found that Appellant did not allege "what future public duties [Appellant] was assigned that [Celebrezze] intended to influence or hinder."

{¶ 55} In Count 5, Appellant alleged that Celebrezze committed falsification under R.C. 2921.13(A)(2) and (3), which prohibit "mak[ing] a false statement . . . with purpose to incriminate another" or "with purpose to mislead a public official in performing the public official's official function." The trial court found that

Appellant did not identify the "public official" that the Written Counseling was "intended to mislead."

{¶ 56} Finally, in Count 6, Appellant alleged that Celebrezze interfered with her civil rights under R.C. 2921.45(A), which prohibits a "public servant, under color of" his or her "office, employment, or authority," from "depriv[ing], or conspir[ing] or attempt[ing] to deprive any person of a constitutional or statutory right." The trial court found that Appellant did not "specify what constitutional or statutory right was violated."

{¶ 57} In effect, the trial court required Appellant to allege, with particularity, each element of every underlying crime. Notably, Celebrezze did not request a more definite statement of any of Appellant's claims under Civ.R. 12(E). In fact, Celebrezze filed Answers to Appellant's original and Amended Complaints, which shows she was able to prepare responsive pleadings.

{¶ 58} Further, in several of the above instances, Appellant pleaded with more particularly than the trial court acknowledged. Appellant alleged that the "things of value" under R.C. 102.03(D) and (E) included Celebrezze's "affair with Dottore and any attendant financial benefits including expensive meals, etc." Amended Complaint at ¶ 166 and 167.

{¶ 59} Regarding "honest services" under 18 U.S.C. 1346, Appellant alleged that "[v]arious federal public-corruption statutes also apply to Celebrezze's conduct, including those prohibiting, bribery, extortion, gratuities, mail fraud, wire fraud, and depriving others (including public entities like the State of Ohio and Cuyahoga

County) of their intangible right of honest services under 18 U.S.C. § 1346."

Amended Complaint at ¶ 164.

{¶ 60} Regarding "future behavior" that Celebrezze "wanted to influence" under R.C. 2921.04(A), Appellant alleged that Celebrezze intended "to prevent corroborating details from emerging about [her] extramarital and unethical dalliance with Dottore" and "to chill others from speaking truthfully about what they knew." Amended Complaint at ¶ 7.

{¶ 61} Regarding "public officials" that Celebrezze "intended to mislead" under R.C. 2921.13(A)(2) and (3), Appellant identified "courts in expected litigation, prosecutors, and disciplinary authorities." Amended Complaint at ¶ 197. And regarding "statutory rights" under R.C. 2921.45(A), Appellant alleged that Celebrezze violated her "civil, and state and federal statutory rights . . . [a]s detailed above in the previous causes of action." Amended Complaint at ¶ 227.

{¶ 62} Based on this court's independent review, Appellant's Amended Complaint satisfies Ohio's notice-pleading standard.

**Judgment on the Pleadings**

{¶ 63} Appellant next argues that the trial court erred in dismissing her Amended Complaint because she adequately stated her R.C. 2307.60 claims.[3]

{¶ 64} To reiterate, the trial court was required to (1) construe as true, and in Appellant's favor, the material allegations in her Amended Complaint and all

---

[3] Appellant does not raise any arguments on appeal regarding Count 7 of her Amended Complaint (intentional infliction of emotional distress). Therefore, we do not address the trial court's dismissal of Count 7.

reasonable inferences to be drawn from those allegations and (2) determine whether it appears beyond doubt that Appellant can prove no set of facts that would entitle her to relief. *Reister*, 2020-Ohio-5484, at ¶ 17. A review of the trial court's entry indicates it did not properly apply that standard.

{¶ 65} In Count 1, Appellant alleged that Celebrezze had an unlawful interest in a public contract under R.C. 2921.42(A)(1) and (4). The trial court presumed Appellant was alleging that Celebrezze "caused Cuyahoga County to enter into a contract with Mr. Dottore to provide receivership services for Cuyahoga County." The trial court found that Celebrezze had statutory authority under R.C. 2735.01 to appoint a receiver and provide for the receiver's compensation. Therefore, the trial court concluded there was no "public contract" under R.C. 2921.42(A).

{¶ 66} Appellant's allegations do not compel the trial court's presumption. Appellant alleged that she is a witness to Celebrezze "knowingly having an interest in the profits or benefits of a public contract entered into by or for the use of the DR court—the contracts with Dottore's businesses." (Emphasis deleted.) Amended Complaint at ¶ 168. Appellant's allegations may be construed as alleging the existence of a contract between the DR court and Dottore, rather than the county. The fact that a common pleas court has certain statutory authority over a receiver does not necessarily preclude the existence of a "public contract."

{¶ 67} In Count 1, Appellant also alleged that Celebrezze participated in a pattern of corrupt activity under R.C. 2923.32(A)(1). The trial court found that R.C. 2923.31(E) requires "two or more incidents of corrupt activity"; however, Appellant

alleged "only one potential incident of corrupt activity"—"the termination of [Appellant's] employment." The trial court also found that Celebrezze's alleged conduct did not result in "injur[y]" to Appellant's "person or property" under R.C. 2307.60.

{¶ 68} The trial court misconstrued Appellant's allegations. Appellant alleged that Celebrezze committed multiple state and federal corruption-related crimes. *See* Amended Complaint at ¶ 159-164. Therefore, she necessarily alleged "two or more incidents of corrupt activity." In addition, Appellant did not allege that Celebrezze's corruption was the cause of her injury. Rather, she alleged injury resulting from Celebrezze's attempted intimidation and retaliation, which allegedly occurred because Appellant is a witness to Celebrezze's corruption. *See* Amended Complaint at ¶ 171-174.

{¶ 69} In Count 1, Appellant also alleged that Celebrezze committed retaliation under 18 U.S.C. 1513(b)(2), which prohibits "damag[ing] the tangible property of another person" or "threaten[ing] to do so." The trial court found that "[a]ny property interest in [Appellant's] future salary or future increases in retirement benefits are not tangible." The trial court cited no definition of "tangible property" that would exclude Appellant's alleged damages as a matter of law.

{¶ 70} In Count 1, Appellant also alleged that Celebrezze committed intimidation under R.C. 2921.04(B)(2), which prohibits, "by unlawful threat of harm to any person or property," "attempt[ing] to influence, intimidate, or hinder . . . [a] witness to a criminal or delinquent act by reason of the person being a witness to

that act[.]" The trial court found that the DR court's personnel actions against Appellant do not constitute "an unlawful threat of harm" to "property" because Appellant was "an unclassified, at-will employee" who did not have a "property interest" in "any future salary expectations or in any future increase in retirement benefits." The trial court dismissed Counts 2 and 3 on the same basis.

{¶ 71} The pleadings and their exhibits did not establish Appellant's employment status as a matter of law. Although Celebrezze asserted in her answer that Appellant "served at the pleasure of the Domestic Relations court in an unclassified Judicial Assistant position," the trial court was required to construe all material allegations in Appellant's favor.

{¶ 72} Finally, in Count 4, Appellant alleged that Celebrezze tampered with records under R.C. 2913.42(A)(1) and (2), which provide, "No person, knowing the person has no privilege to do so, and with purpose to defraud or knowing that the person is facilitating a fraud, shall . . . [f]alsify, destroy, remove, conceal, alter, deface, or mutilate any writing, computer software, data, or record; [or] . . . [u]tter any writing or record, knowing it to have been tampered with as provided in division (A)(1) of this section." The trial court found that to "defraud" requires "a knowing deception of someone," i.e., "someone who justifiably relied on the false statements." The trial court concluded that the Written Counseling did not deceive Appellant.

{¶ 73} Appellant did not allege that she was defrauded, and the statute does not necessarily require the alleged victim to have been defrauded. Rather, "purpose

to defraud" and "knowing that the person is facilitating a fraud" are the mens-rea elements for tampering with records.

{¶ 74} Construing the allegations in Appellant's Amended Complaint as true and in her favor, as required, this court cannot say that Appellant can prove no set of facts that would entitle her to relief. The trial court erred in dismissing Appellant's Amended Complaint.

{¶ 75} Accordingly, Appellant's sole assignment of error has merit.

{¶ 76} The trial court's judgment is reversed, and this case is remanded for further proceedings. On remand, nothing in our decision should be construed as passing judgment on the veracity of Appellant's allegations or the substantive merits of her claims.

{¶ 77} For the foregoing reasons, the judgment of the Cuyahoga County Court of Common Pleas is reversed, and this case is remanded for further proceedings.

It is ordered that appellant recover from appellee the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to

Rule 27 of the Rules of Appellate Procedure.

_____

JOHN J. EKLUND, JUDGE*

ROBERT J. PATTON, P.J.,* and
EUGENE A. LUCCI, J.,* CONCUR

(*Sitting by assignment:  Eleventh District Court of Appeals.)